## MACKEY ET AL. *v.* LANIER COLLECTION AGENCY & SERVICE, INC.

No. 86–1387.   Argued April 19, 1988—Decided June 17, 1988

826

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, MARSHALL, and STEVENS, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which BLACKMUN, O'CONNOR, and SCALIA, JJ., joined, *post*, p. 841.

*Ernest L. Mathews, Jr.,* argued the cause for petitioners. With him on the briefs were *Thomas W. Gleason, Charles R. Goldburg,* and *Kevin Marrinan.*

*Brian J. Martin* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Fried, Deputy Solicitor General Ayer, Christopher J. Wright, George R. Salem, Allen H. Feldman,* and *Carol A. De Deo.*

*Maureen E. Mahoney,* by invitation of the Court, 484 U. S. 809, argued the cause and filed a brief as *amicus curiae* in support of the judgment below.*

JUSTICE WHITE delivered the opinion of the Court.

The issue here is whether and to what extent the Georgia statutes bearing on the garnishment of funds due to participants in ERISA employee welfare benefit plans are preempted by the federal statute which governs such plans.

## I

Petitioners are the trustees of an employee benefit plan that provides vacation and holiday benefits to eligible employees in several southeastern States. The covered workers draw their vacation benefits from the plan annually. The plan is an "employee welfare benefit plan" as defined by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. § 1002(1).[1]

Respondent is a collection agency. It sought and obtained money judgments against 23 plan participants who owed money to clients of respondent. To collect these money judg-

---

*Benna Ruth Solomon* and *Eric B. Amstutz* filed a brief for the National Conference of State Legislatures et al. as *amici curiae* urging reversal.

*John K. Van de Kamp,* Attorney General of California, *Edmond B. Mamer,* Supervising Deputy Attorney General, and *Raymond B. Jue,* Deputy Attorney General, filed a brief for the State of California as *amicus curiae.*

[1] As defined in 29 U. S. C. § 1002(3), employee benefit plans are of two types: Welfare benefit plans provide health, legal, vacation, or training benefits. § 1002(1). Pension benefit plans provide retirement income. § 1002(2). The plan involved here is a welfare benefit plan.

ments, respondent instituted an action in a Georgia trial court seeking to garnish the debtors' plan benefits. The trial court granted the garnishment request. App. to Pet. for Cert. A–21. The Georgia Court of Appeals reversed, holding that a Georgia statute, Ga. Code Ann. § 18–4–22.1 (1982),[2] barring the garnishment of "[f]unds or benefits of [an] . . . employee benefit plan or program subject to . . . [ERISA]," exempted plan benefits from garnishment. 178 Ga. App. 467, 470, 343 S. E. 2d 492, 495 (1986).

The Georgia Supreme Court reversed. 256 Ga. 499, 350 S. E. 2d 439 (1986). It agreed that § 18–4–22.1 by its terms barred this garnishment action, but concluded that the section was pre-empted by ERISA "since it purports to regulate garnishment of ERISA funds and benefits, a matter specifically provided for" in the federal scheme. *Id.*, at 501, 350 S. E. 2d, at 442. Through an analysis of ERISA's pre-emption provisions, the Georgia Supreme Court concluded that Congress had not barred garnishment of employee *welfare* benefits, even though employee *pension* benefits were so protected. See 29 U. S. C. § 1056(d) (1982 ed. and Supp. IV). Since § 18–4–22.1 "prohibits that which the federal statute permits," the Georgia Supreme Court held, the state law was "in conflict with" the federal scheme, and therefore pre-empted by it. 256 Ga., at 501, 350 S. E. 2d, at 442. Consequently, the plan was subject to garnishment under the general state garnishment law, Ga. Code Ann. § 18–4–20 *et seq.* (1982 and Supp. 1987).

Because of conflicting decisions among the courts on the questions presented here, we granted certiorari. 483 U. S.

---

[2] The Georgia law at issue here provides, in relevant part:

"Funds or benefits of a pension, retirement, or employee benefit plan or program subject to the provisions of the federal Employee Retirement Income Security Act of 1974, as amended, shall not be subject to the process of garnishment . . . unless such garnishment is based upon a judgment for alimony or for child support . . . ." Ga. Code Ann. § 18–4–22.1 (1982)

1004 (1987). We now affirm the Georgia Supreme Court's judgment.[3]

## II

ERISA § 514(a) pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U. S. C. § 1144(a). We believe that under our precedents, Ga. Code Ann. § 18–4–22.1 is such a state law.

The Georgia statute at issue here expressly refers to—indeed, solely applies to—ERISA employee benefit plans. See n. 2, *supra*. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with *or reference to* such a plan." *Shaw* v. *Delta Air Lines, Inc.*, 463 U. S. 85, 96–97 (1983) (emphasis added). On several occasions since our decision in *Shaw*, we have reaffirmed this rule, concluding that state laws which make "reference to" ERISA plans are laws that "relate to" those plans within the meaning of § 514(a). See, *e. g.*, *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U. S. 41, 47–48 (1987); *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U. S. 724, 739 (1985). In fact, we have virtually taken it for granted that state laws which are "specifically designed to affect employee benefit plans" are pre-empted under § 514(a). Cf. *Pilot Life Ins. Co.* v. *Dedeaux, supra*, at 47–48; *Shaw* v. *Delta Air Lines, Inc., supra*, at 98.

The possibility that § 18–4–22.1 was enacted by the Georgia Legislature to help effectuate ERISA's underlying purposes—the view of the Georgia Court of Appeals below, see 178 Ga. App., at 467, 343 S. E. 2d, at 493—is not enough to save the state law from pre-emption. "The pre-emption provision [of § 514(a)] . . . displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metropolitan*

---

[3] Respondent elected not to appear in this Court, and we appointed an *amicus curiae* to defend the judgment below. 484 U. S. 809 (1987).

*Life Ins. Co.* v. *Massachusetts, supra,* at 739. The decision in *Shaw* particularly underscores this point. There, we found a New York antidiscrimination statute pre-empted under § 514(a), even though Congress had not expressed any intent in ERISA to approve of the employment practices that the State had banned by its statute. *Shaw, supra,* at 97, n. 15, 98–99. Legislative "good intentions" do not save a state law within the broad pre-emptive scope of § 514(a).

Consequently, adhering to our precedents in this area, we hold that Ga. Code Ann. § 18–4–22.1, which singles out ERISA employee welfare benefit plans for different treatment under state garnishment procedures,[4] is pre-empted under § 514(a). The state statute's express reference to ERISA plans suffices to bring it within the federal law's pre-emptive reach.

### III

A more complex question is posed by the argument of petitioners, rejected by the Georgia Supreme Court, that the entire Georgia garnishment procedure is pre-empted by ERISA. We reserved decision on the issue in *Franchise Tax Board of California* v. *Construction Laborers Vacation Trust for Southern California,* 463 U. S. 1, 7, 26, n. 30 (1983); the question, which is one of federal law,[5] is a close

---

[4] This "different treatment" is illustrated, not only by the express reference to ERISA plans in the language of § 18–4–22.1, but also in the disparate treatment accorded to non-ERISA benefit plans under Georgia law. Under the State's garnishment statutes, non-ERISA pension and retirement plans are exempted from garnishment, but no exemption is provided for non-ERISA employee welfare benefit plans. Compare Ga. Code Ann. § 18–4–22 (Supp. 1987) with Ga. Code Ann. § 18–4–22.1 (1982). Consequently, ERISA welfare benefit plans are protected from garnishment under Georgia law, but non-ERISA plans are not so protected.

[5] All of the litigants who argued before this Court agreed that federal law controls the resolution of this question. See Brief for Petitioners 11–13; Brief for United States as *Amicus Curiae* 16–17 (filed Aug. 27, 1987); Brief of *Amicus Curiae* in Support of Judgment Below 9.

one. We believe, however, that petitioners' contention misapprehends ERISA's pre-emptive scope.

### A

Unlike the Georgia antigarnishment provision discussed above, Georgia's general garnishment statute does not single out or specially mention ERISA plans of any kind. But as we have recognized, the pre-emptive force of § 514(a) is not limited to such state laws. See, e. g., *Pilot Life Ins. Co.* v. *Dedeaux, supra,* at 47–48, and *Shaw* v. *Delta Air Lines, Inc., supra,* at 98. Consequently, we must decide whether § 514(a) pre-empts Georgia's general garnishment law because it "relates to" the ERISA welfare benefit plans that petitioners direct.

In arguing for pre-emption, petitioners assert that when an employee welfare benefit plan is garnisheed under Georgia law by a creditor of a participant, plan trustees are served with a garnishment summons, become parties to a suit, and must respond and deposit the demanded funds due the beneficiary-debtor—funds that otherwise they are required to hold and pay out to those beneficiaries. At the very least, petitioners contend, benefit plans subjected to garnishment will incur substantial administrative burdens and costs. Because garnishment will involve and affect the plan and its trustees in these ways, petitioners submit the Georgia garnishment law necessarily "relates to" such ERISA welfare benefit plans and is therefore pre-empted by § 514(a).

Unfortunately, ERISA itself offers no express answer as to whether welfare benefit plan trustees must comply with garnishment orders like those respondent is seeking to enforce. In our view, however, certain ERISA provisions, and several aspects of the statute's structure, indicate that Congress did not intend to forbid the use of state-law mechanisms of executing judgments against ERISA welfare benefit plans, even when those mechanisms prevent plan partici-

pants from receiving their benefits. Consequently, we join the virtually unanimous view of federal and state courts which have faced this question, and hold that federal law does not bar a garnishment action like respondent's.[6]

At the outset, we consider the several types of civil suits that can be brought against ERISA welfare benefit plans. First, ERISA's § 502 provides that civil enforcement actions may be brought by particular persons against ERISA plans, to secure specified relief, including the recovery of plan benefits. Suits for benefits or to enforce a participant's rights under a plan may be brought in either federal or state court. 29 U. S. C. § 1132(e). Section 502, which provides that a plan may "sue or be sued" as an entity in § 502 actions, 29 U. S. C. § 1132(d)(1), clearly contemplates the enforcement of money judgments against benefit plans, 29 U. S. C.

---

[6] As far as we are aware, the only state or federal court decision in a case involving an employee welfare benefit plan to adopt the United States' view (that § 514(a) pre-empts state-law attachments of welfare benefit plans) was the Ninth Circuit's opinion in *Franchise Tax Board of California* v. *Construction Laborers Vacation Trust for Southern California*, 679 F. 2d 1307 (1982). That decision was subsequently vacated by the Court, 463 U. S. 1 (1983).

Since that action, decisions from the Ninth Circuit have abandoned the position taken by the panel majority in *Franchise Tax Board*, and have adopted the interpretation of § 514(a) that Judge Tang expressed in dissent in that case, 679 F. 2d, at 1310–1311. See, *e. g.*, *Misic* v. *Building Service Employees Health & Welfare Trust*, 789 F. 2d 1374, 1376–1377 (1986); *Arizona Laborers, Teamsters, and Cement Masons, Local 395 Pension Trust Fund* v. *Nevarez*, 661 F. Supp. 365, 368–370 (Ariz. 1987).

Other courts which have faced this question in this context have likewise concluded that ERISA does not pre-empt the application of state garnishment procedures to ERISA welfare benefit plans. See, *e. g.*, *Local Union 212, Int'l Brotherhood of Electrical Workers Vacation Trust Fund* v. *Local 212, Int'l Brotherhood of Electrical Workers Credit Union*, 735 F. 2d 1010, 1011 (CA6 1984) *(per curiam)*, aff'g 549 F. Supp. 1299, 1300–1302 (SD Ohio 1982); *First Nat. Bank of Commerce* v. *Latiker*, 432 So. 2d 293, 296 (La. App. 1983); *Electrical Workers Credit Union* v. *IBEW-NECA Holiday Trust Fund*, 583 S. W. 2d 154, 158–159 (Mo. 1979).

§ 1132(d)(2).[7]   See also H. R. Conf. Rep. No. 93–1280, p. 327 (1974).

ERISA plans may be sued in a second type of civil action, as well.   These cases—lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan— are relatively commonplace.[8]   Petitioners and the United States (appearing here as *amicus curiae*) concede that these suits, although obviously affecting and involving ERISA plans and their trustees, are not pre-empted by ERISA § 514(a).   See Tr. of Oral Arg. 6, 11–12, 15.

ERISA does not provide an enforcement mechanism for collecting judgments won in either of these two types of actions.   Thus, while § 502(d), the "sue and be sued" provision, contemplates execution of judgments won against plans in civil actions, it does not provide mechanisms to do so.   More-

---

[7] The "sue and be sued" clause found in ERISA § 502 provides, in pertinent part:

"(a) . . .

"A civil action may be brought—

"(1) by a participant or beneficiary—

.            .            .            .            .

"(B) to recover benefits due to him under the terms of his plan . . . .

.            .            .            .            .

"(d) . . .

"(1) An employee benefit plan may sue or be sued under this subchapter as an entity. . . .

"(2) Any money judgment won under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity . . . ."   29 U. S. C. § 1132.

[8] See, *e. g.*, *Morris* v. *Local 804, Delivery & Warehouse Employees Health & Welfare Fund*, 116 Misc. 2d 234, 455 N. Y. S. 2d 517 (N. Y. City Civ. Ct. 1982) (suit against ERISA plan for unpaid rent); *Luxemburg* v. *Hotel & Restaurant Employees & Bartenders Int'l Union Pension Fund*, 91 Misc. 2d 930, 398 N. Y. S. 2d 589 (New York Cty. Ct. 1977) (suit against ERISA plan for unpaid attorneys' fees); *Abofreka* v. *Alston Tobacco Co.*, 288 S. C. 122, 341 S. E. 2d 622 (1986) (tort suit against ERISA plan).

over, Federal Rule of Civil Procedure 69(a), which would apply when either type of civil suit discussed above is brought against an ERISA plan in federal court, defers to state law to provide methods for collecting judgments. Cf. also *Huron Holding Corp.* v. *Lincoln Mine Operating Co.,* 312 U. S. 183, 188–194 (1941). Consequently, state-law methods for collecting money judgments must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way to enforce such a judgment won against an ERISA plan. If attachment of ERISA plan funds does not "relate to" an ERISA plan in any of these circumstances, we do not see how respondent's proposed garnishment order would do so.[9]

It is thus clear enough that money judgments against ERISA welfare benefit plans, based on state or federal law, won in state or federal court, must be collectible in some way; garnishment is one permissible method. In fact, while petitioners' brief argued that *any* garnishment of an ERISA plan was pre-empted, see Brief for Petitioners 14, under questioning at oral argument, petitioners conceded that garnishment is among the state-law enforcement mechanisms that may used in certain types of cases involving ERISA welfare benefit plans. See Tr. of Oral Arg. 6–7.[10]

---

[9] Our conclusion here is further supported by the interpretation we have adopted of "sue and be sued" clauses in previous cases involving other statutes. When Congress provides by law that an entity may "sue and be sued," this includes "all civil process[es] incident to . . . legal proceedings" including "[g]arnishment and attachment." *FHA* v. *Burr,* 309 U. S. 242, 245–246 (1940). We have reaffirmed the view that a "sue and be sued" clause creates a presumption of susceptibility to garnishment and attachment in our more recent cases, as well. See, *e. g., Franchise Tax Board of California* v. *USPS,* 467 U. S. 512, 517–525 (1984). Even petitioners concede that our usual rule is that a "sue and be sued" clause makes a subject entity susceptible to garnishment. See Tr. of Oral Arg. 7.

[10] Following this concession, petitioners later suggested (in a somewhat contradictory argument) that garnishment is not a state procedural device for collecting judgments obtained under some other substantive body of

Nonetheless, petitioners and the United States insist that ERISA § 514(a) bars enforcement of the particular garnishment orders at issue here. The United States rests this claim on its view that § 514(a) prohibits ERISA welfare benefit plans from complying with state-law enforcement orders (like garnishment) *only* where these orders affect "whether benefits will be paid to a plan participant." See Tr. of Oral Arg. 15–16. Under this view of § 514(a), state-law enforcement mechanisms can be used to collect judgments from plan funds when they are won by general creditors of the plan, but not by creditors of plan participants.

The problem with this proposed interpretation of § 514(a) is that it has no basis whatsoever in the language of the statute. Section 514(a) pre-empts State laws "insofar as they . . . relate to . . . employee benefit plan[s]": no distinction is made between plan funds generally and those funds due a particular participant at a particular time. As the *amicus curiae*

law, but rather, "substantive law . . . [that] creates rights and liabilities where none existed before." See *id.*, at 9.

We note, however, that under Georgia law (at least), garnishment is a "procedural" mechanism for the enforcement of judgments. Georgia's statute that provides for garnishment creates no substantive causes of action, no new bases for relief, or any grounds for recovery; the Georgia garnishment law does not create the rule of decision in any case affixing liability. Rather under Georgia law, postjudgment garnishment is nothing more than a method to collect judgments *otherwise* obtained by prevailing on a claim against the garnishee. See Ga. Code Ann. § 18–4–60 (1982).

This analysis is reinforced by the fact that, under the Georgia statute, a garnishor can obtain a writ of garnishment for the purpose of executing the judgments of either the state *or* federal courts sitting in Georgia, *ibid.*, and by the Georgia Supreme Court's description of postgarnishment actions as "procedural," see, *e. g.*, *Antico* v. *Antico*, 241 Ga. 294, 244 S. E. 2d 820, 821 (1978); *Easterwood* v. *LeBlanc*, 240 Ga. 61, 239 S. E. 2d 383, 383–384 (1977).

Such is the usual understanding of garnishment. For example, garnishment in the federal system is available under the Federal Rule that provides the "*[p]rocess* to enforce a judgment." See Fed. Rule Civ. Proc. 69(a) (emphasis added); see also, *e. g.*, 7 J. Moore, J. Lucas, & K. Sinclair, Moore's Federal Practice ¶ 69.04[3], p. 69–24 (1986).

appointed by this Court put it, "there is simply no logical way to construe the English language so that garnishment or attachment laws 'relate to' benefit plans when they are invoked by creditors of the beneficiaries, but not when they are invoked by beneficiaries or creditors of the [plan] itself." Brief of *Amicus Curiae* in Support of Judgment Below 24. If § 514(a) allows a creditor of a plan to employ state-law procedures to attach plan funds (to collect a judgment it has won against the plan)—if such an action does not "relate to" a benefit plan—we do not see how § 514(a) bars a participant's creditor from employing the same state-law mechanisms.

Where Congress intended in ERISA to preclude a particular method of state-law enforcement of judgments, or extend anti-alienation protection to a particular type of ERISA plan, it did so expressly in the statute. Specifically, ERISA § 206(d)(1) bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans. 29 U. S. C. § 1056(d)(1). Congress did not enact any similar provision applicable to ERISA *welfare* benefit plans, such as the one at issue in this case. Section 206(d)(1) is doubly instructive.

First, § 206(d)(1) expressly includes a distinction that the United States would have us read into § 514(a). Section 206(d)(1) bars the assignment or alienation of pension plan *benefits*, and thus prohibits the use of state enforcement mechanisms only insofar as they prevent those benefits from being paid to plan participants. As discussed above, § 514(a), by contrast, deals with state laws as they relate to *plans*. The United States asks us to read § 514(a) as protecting only benefits—but not plans as a whole—from state-law attachment orders (recognizing the numerous problems that would arise if we were to conclude that welfare benefit plans could in no way be subjected to state-law attachment). But by adopting § 206(d)(1), Congress demonstrated that it could, where it wished to, stay the operation of state law as it affects only benefits and not plans. The United States asks

us to imply a limitation on a pre-emption provision in one portion of the statute that Congress made express in another portion of ERISA (§ 206(d)(1)). We see no basis for construing the statute in this manner and therefore, in light of § 206(d)(1), reject the United States' suggested interpretation of § 514(a).

Section 206(d)(1) also supports our conclusion in another way. If we were to give ERISA § 514(a) the meaning which petitioners and the United States attribute to it—barring garnishment of all ERISA plan benefits—we would render § 206(d)(1) substantially redundant with § 514(a), as they concede. See Tr. of Oral Arg. 8–9, 14. As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.[11]

Ultimately, in examining §§ 206(d)(1) and 514(a) there is no ignoring the fact that, when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and *not* ERISA welfare benefit plans. In a comprehensive regulatory scheme like ERISA, such omissions are significant ones. Cf. *Massachusetts Mutual Life Ins. Co.* v. *Russell*, 473 U. S. 134, 147 (1985). Once Congress was sufficiently aware of the prospect that ERISA plan benefits could be attached and/or garnisheed—as evidenced by its adoption of § 206(d)(1)—Congress' decision to remain silent concerning the attachment or garnishment of ERISA welfare plan benefits "acknowledged and accepted the practice, rather than prohibiting it." *Alessi* v. *Raybestos-Manhattan, Inc.*, 451

---

[11] See, *e. g.*, *Massachusetts Mutual Life Ins. Co.* v. *Russell*, 473 U. S. 134, 142 (1985); *FEC* v. *National Conservative Political Action Committee*, 470 U. S. 480, 486 (1985); *Park 'N Fly, Inc.* v. *Dollar Park and Fly, Inc.*, 469 U. S. 189, 197 (1985); *United States* v. *Generix Drug Corp.*, 460 U. S. 453, 458–459 (1983); *Dickerson* v. *New Banner Institute*, 460 U. S. 103, 118 (1983).

U. S. 504, 516 (1981). We therefore conclude that Congress did not intend to preclude state-law attachment of ERISA welfare plan benefits.[12]

## B

In support of its reading of § 514(a), the United States relies heavily on a 1984 amendment to ERISA, the Retirement Equity Act of 1984, Pub. L. 98–397, 98 Stat. 1426. The 1984 Act included several changes in ERISA which Congress felt were necessary to guarantee that the Nation's private retirement-income system provided fair treatment for women. See S. Rep. No. 98–575, p. 1 (1984); H. R. Rep. No. 98–655, p. 1 (1984). Among the Act's provisions were amendments to ERISA which insured that the statute's anti-garnishment and pre-emption provisions could not be used to block the enforcement of "qualified domestic relations orders"—generally, court orders providing for child support and alimony payments by ERISA plan participants. See 29 U. S. C. § 1056(d)(3) (1982 ed., Supp. IV); 29 U. S. C. § 1144(b)(7) (1982 ed., Supp. IV). While the primary focus of this portion of the 1984 Act was removing § 206(d)(1)'s anti-garnishment protection from pension plan benefits when spouses sought enforcement of domestic support orders, Congress at the same time also amended § 514(a)'s pre-emption provision. It apparently adopted the latter amendments in response to lower court rulings that had interpreted § 514(a) to bar state-law garnishment for the purpose of enforcing domestic relations orders.[13]

---

[12] It is not incongruous to find that Ga. Code Ann. § 18–4–20 (Supp. 1987), which provides for garnishment of ERISA welfare benefit plans, escapes pre-emption under ERISA, while striking down § 18–4–22.1—an exception to the general state-law provision—as pre-empted. While we believe that state-law garnishment procedures are not pre-empted by § 514 (a), we also conclude that *any* state law which singles out ERISA plans, by express reference, for special treatment is pre-empted. See Part II, *supra*. It is this "singling out" that pre-empts the Georgia antigarnishment exception.

[13] "The courts are divided on the question of whether [ERISA's] anti-assignment clause applies to State domestic relations orders and also on

Petitioners and the United States argue that the 1984 amendment to § 514(a) makes clear that the section, as originally enacted, generally pre-empts state attachment and garnishment procedures. Otherwise, they contend, there would have been no necessity to amend § 514(a) to save domestic relation orders from pre-emption. There is, however, another plausible construction of Congress' action in 1984, namely, that Congress thought that some courts had erroneously construed § 514(a) as pre-empting such orders. In this view, the 1984 amendment served the purpose of correcting the error, thus clarifying the original meaning of the section.[14] Cf. *Edward J. DeBartolo Corp.* v. *Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U. S. 568, 585 (1988); *United Airlines, Inc.* v. *McMann*, 434 U. S. 192, 218 (1977) (MARSHALL, J., dissenting.) Moreover, even if the United States is correct, and Congress in 1984 thought that § 514(a) as originally enacted pre-empted domestic relations orders directed at ERISA plans—and other state-law attachments and garnishments as well—the opinion of this later Congress as to the meaning of a law enacted 10 years earlier does not control the issue. *United Airlines, Inc.* v.

---

the question of whether the pre-emption clause [§ 514(a)] refers to State domestic relations laws and court orders." H. R. Rep. No. 98–655, pt. 1, p. 30 (1984).

[14] For this reason we think the dissent's suggestion that our reading of § 514(a) renders that provision "redundant" with § 514(b)(7) is unsound. *Post*, at 845–846. Section 514(b)(7) was enacted a decade after § 514(a) was adopted, in response to lower court interpretations of § 514(a) which were not of Congress' liking. Consequently, even if (given the interpretation of § 514(a) which we adopt today) § 514(b)(7) overlaps with § 514(a), our decision does not suffer from the evil of rendering duplicative two statutory provisions simultaneously adopted by Congress.

Unfortunately, the same cannot be said of the dissent's reading of § 206(d)(1) and § 514(a), which does render "redundant" two provisions of ERISA enacted at the same time. It is this sort of redundancy—*i. e.*, the suggestion that Congress intentionally adopted, at a single time, two separate provisions having the same meaning—that calls a particular statutory interpretation into question. See n. 11, *supra*. Even the dissent concedes that this problem plagues its reading of § 514(a). *Post*, at 845.

*McMann, supra,* at 200, n. 7.  "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."  *United States* v. *Price,* 361 U. S. 304, 313 (1960).[15]

Much the same is to be said about the sentence in the relevant House Committee Report on which the United States relies: "[T]he Committee reasserts that a state tax levy on employee welfare benefit plans is pre-empted by ERISA (see the holding of the 9th Circuit in *Franchise Tax Board . . .* )." H. R. Rep. No. 98–655, pt. 1, *supra,* at 42.  This statement does suggest that the House Committee in 1984 thought that § 514(a) foreclosed state-law attachment orders akin to those at issue here.  But again, these views—absent an amendment to the original language of the section—do not direct our resolution of this case.  Instead, we must look at the language of ERISA and its structure, to determine the intent of the Congress that originally enacted the provision in question.  "It is the intent of the Congress that enacted [the section] . . . that controls."  *Teamsters* v. *United States,* 431 U. S. 324, 354, n. 39 (1977).  This inquiry supports our reading of § 514(a), which is the reading given it by every other court that has considered the issue in this context (save the Ninth Circuit in a decision that was vacated by this Court).

---

[15] See also, *e. g., Jefferson County Pharmaceutical Assn.* v. *Abbott Laboratories,* 460 U. S. 150, 165, n. 27 (1983); *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.,* 447 U. S. 102, 116–118, and n. 13 (1980); *Oscar Mayer & Co.* v. *Evans,* 441 U. S. 750, 758 (1979).

The dissent claims that we are ignoring, in § 514(b)(7), "a positive expression of legislative will" that forecloses our interpretation of § 514(a). *Post,* at 843.  But whatever else one can say about the relevance of § 514 (b)(7) to this case, one cannot say that that statutory provision amounts to a congressional enactment that controls here.  Section 514(b)(7) has no direct bearing on this case, because it involves a type of garnishment order not at issue here.  The most one can glean from § 514(b)(7) is a sense of what Congress, in 1984, understood the scope of § 514(a) to be—a sense that does not command our obedience here.  Moreover, for the reasons we discuss above, we do not even think that it is clear that the 98th Congress actually read § 514(a) in the way that the dissent insists that it did.

## IV

Accordingly, we hold that ERISA does not forbid garnishment of an ERISA welfare benefit plan, even where the purpose is to collect judgments against plan participants. Moreover, since we agree with the Georgia Supreme Court that the Georgia antigarnishment provision found in Ga. Code Ann. § 18–4–22.1 (1982) is pre-empted by ERISA, the judgment below is

*Affirmed.*

JUSTICE KENNEDY, with whom JUSTICE BLACKMUN, JUSTICE O'CONNOR, and JUSTICE SCALIA join, dissenting.

When it enacted ERISA in 1974, Congress expressly pre-empted "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan," and broadly defined "state law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law." ERISA § 514(a), 29 U. S. C. § 1144(a). The Court holds that these provisions pre-empt a Georgia statute, Ga. Code Ann. § 18–4–22.1 (1982), specifically exempting ERISA plans from the State's garnishment laws. With this much I agree. The Court also holds, however, that § 514(a), ERISA's pre-emption provision, does not prohibit the garnishment of funds due to participants in ERISA welfare benefit plans. I believe that this latter conclusion is inconsistent with both the statute and our precedents and, with all respect, I dissent.

## I

We have said with repeated emphasis that the reach of § 514(a) is not limited to state laws specifically designed to affect employee benefit plans. See *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U. S. 41, 45–46 (1987); *Shaw* v. *Delta Airlines, Inc.*, 463 U. S. 85, 98 (1983). Further, the reach of § 514(a) is not limited to state laws that conflict with the substantive provisions of ERISA. See *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U. S. 724, 739 (1985). On the contrary,

the phrase "relate to" must be "'given its broad common-sense meaning, such that a state law "relate[s] to" a benefit plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan."'" *Pilot Life Insurance Co.* v. *Dedeaux, supra,* at 47, quoting *Metropolitan Life, supra,* at 739, in turn quoting *Shaw, supra,* at 99. In my view, state garnishment laws necessarily relate to employee benefit plans to the extent they require such plans to act as garnishees, which is a substantial and onerous obligation.

Compliance with the state garnishment procedures subjects the plan to significant administrative burdens and costs. Petitioners are required to confirm the identity of each of the 23 plan participants who owe money to respondent, calculate the participant's maximum entitlement from the fund for the period between the service date and the reply date of the summons of garnishment, determine the amount that each participant owes to respondent, and make payments into state court of the lesser of the amount owed to respondent and the participant's entitlement. Petitioners must also make decisions concerning the validity and priority of garnishments and, if necessary, bear the costs of litigating these issues. Further, as trustees of a multiemployer plan covering participants in several States, petitioners are potentially subject to multiple garnishment orders under varying or conflicting state laws. It is apparent that these effects of garnishment laws on employee benefit plans are not tenuous, remote, or peripheral, and that such laws are accordingly pre-empted. See *Shaw* v. *Delta Airlines, Inc., supra,* at 100, n. 21.

This common-sense reading of the language of § 514(a) is confirmed by Congress' decision to exempt certain "domestic relations orders" from the pre-emptive reach of ERISA. See 29 U. S. C. § 1144(b)(7) (1982 ed., Supp. IV). As the majority acknowledges, this provision was intended to save from pre-emption certain garnishments designed to enforce domestic relations obligations. See *ante,* at 838. The ma-

jority disregards, however, the strong structural implication created by the limited scope of this exception. Surely Congress knew that similar questions concerning the validity of garnishment procedures would arise in other contexts. Indeed, the majority recognizes as much. See *ante*, at 840, citing H. R. Rep. No. 98–655, pt. 1, p. 42 (1984). Yet Congress decided to save from pre-emption only a limited class of garnishment orders, and then only upon specifically prescribed conditions. See 29 U. S. C. § 1056(d)(3)(B)(i) (1982 ed., Supp. IV) (defining "qualified domestic relations order"). The majority's conclusion that ERISA does not bar garnishment of welfare plan benefits renders nugatory this carefully calibrated legislative choice.

It is no answer to say, as the majority does, that the "'views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" *Ante*, at 840, quoting *United States* v. *Price*, 361 U. S. 304, 313 (1960). For the views that the majority rejects are not the postenactment musings of a Member of Congress or congressional committee, but a positive expression of legislative will to which we are bound to give effect. In enacting § 514(b)(7) Congress dispelled any possible doubt concerning the circumstances under which welfare benefit plans are required to comply with state orders providing for the garnishment of plan benefits. The Court, which not infrequently calls upon Congress to manifest its intent more clearly, today disregards a clear answer given by Congress in a valid enactment.

## II

In reaching its conclusion that Georgia's garnishment statutes are not pre-empted in the circumstances of this case, the Court relies on two principal arguments. First, the Court notes that Congress contemplated that ERISA benefit plans would be subject to suit under certain circumstances. The majority notes, correctly, that civil enforcement actions are maintainable pursuant to 29 U. S. C. § 1132. The majority

points further to certain suits that may be brought "against ERISA plans for run-of-the-mill state-law claims . . . ." *Ante*, at 833. The Court reasons that, as ERISA does not provide an enforcement mechanism for collecting judgments won in such suits, Congress must have intended that state-law methods of collection remain undisturbed.

This argument has no relevance to the issue before us. The question we face is not whether garnishment may be used to enforce a valid judgment obtained against an ERISA plan. When garnishment is so used, its process issues against some third party who owes the plan a debt or who has property in his possession in which the plan has an interest. The significant burdens of complying with the garnishment order fall on the plan's debtor, not on the plan. The issue we face in this case is quite different: it is whether an ERISA benefit plan may be forced to act as a *garnishee* by creditors of the plan's participants and beneficiaries. Because the Court fails to analyze the different contexts in which state garnishment laws may affect ERISA plans, its conclusion that such laws are never pre-empted is far too broad. And while the Court's conclusion may be valid in garnishment proceedings where an ERISA plan is the debtor, it is plainly unwarranted in situations where, as here, the plan is a garnishee. For it is in the latter situation that plans face the repetitious and costly burden of monitoring controversies involving hundreds of beneficiaries and participants in various States.

Further, it assumes the point in issue to say that the Court's conclusion is required by cases holding that a "sue-and-be-sued" clause creates a presumption of susceptibility to garnishment and other state-law procedures for enforcing judgments. See *ante*, at 834, n. 9, citing *Franchise Tax Board of California* v. *USPS*, 467 U. S. 512 (1984), and *FHA* v. *Burr*, 309 U. S. 242 (1940). The "sue-and-be-sued" clause in each of those cases was a waiver of the sovereign immunity that otherwise would have protected certain federal agencies from legal process, including writs of garnishment. In that

context, it was perfectly sensible to "presum[e] that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued,' that agency is no less amenable to judicial process than a private enterprise under like circumstances would be." *FHA* v. *Burr, supra,* at 245. In the ERISA context, by contrast, §514(a) substantively limits the States' ability to treat employee benefit plans as they may treat any commercial enterprise. Our cases finding several state-law causes of action pre-empted establish at least this much. See, *e. g., Pilot Life,* 481 U. S., at 47–48 (holding that certain contract and tort laws, though otherwise generally applicable, may not be invoked against an employee benefit plan); *Shaw,* 463 U. S., at 103–106 (finding certain fair employment laws pre-empted).

The second argument on which the Court relies is that the conclusion that §514(a) pre-empts the state statutes at issue in this case would render redundant the bar against alienation or assignment of pension benefits set forth in ERISA §206(d)(1), 29 U. S. C. §1056(d)(1). See *ante,* at 837. This provision prohibits any assignment, whether voluntary or involuntary, of pension plan assets. Under the view the Court rejects, §514(a) would prohibit involuntary assignments of pension and welfare plan assets because such assignments necessarily would be effected by application of state laws, like the Georgia laws at issue in this case, that are pre-empted. I agree with the Court that ordinarily the partial redundancy of a statutory command, such as would result from the interpretation of §514(a) that the Court rejects, is not lightly to be inferred. Nevertheless, I believe there are two reasons why this consideration is not weighty in the present context.

First, the alternative construction adopted by the Court results in the total redundancy of §514(b)(7), 29 U. S. C. §1144(b)(7) (1982 ed., Supp. IV). It is preferable, in my view, to tolerate the partial overlap rejected by the Court than to construe §514(a) so as to render another section of the

statute surplus in its entirety. Second, the deliberate, expansive reach of § 514(a) necessarily encompasses many state laws that would be pre-empted even in the absence of its broad mandate, solely on the basis of their conflict with ERISA's substantive requirements. Some degree of overlap is a necessary concomitant of the approach to pre-emption chosen by Congress. The partial redundancy which the Court strives to avoid is essentially analogous to a host of like overlaps that Congress must have foreseen. To suggest that this type of overlap is sufficient to call into question the applicability of § 514(a) is to defeat the very purpose for which it was enacted. I cannot agree with the Court's conclusion that petitioners must comply with the garnishment orders at issue in this case.