**In the Matter of David C. NUTTLEMAN and Diane E. Nuttleman, Debtor.**

**Bankruptcy No. BK89–81526.**

United States Bankruptcy Court,
D. Nebraska.

Aug. 22, 1990.

David Nuttleman, Gering, Neb., and Nokomis, Fla., pro se.

Richard Myers, Omaha, Neb., trustee.

Jim M. Carney, Scottsbluff, Neb., for Gering State Bank.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Telephonic hearing was held on April 20, 1990, regarding the trustee's objection to the debtors' claim of exemptions (Filing No. 35). The debtor, David Nuttleman (debtor) appeared pro se. Richard Myers appeared as the trustee. Jim Carney, of Scottsbluff, Nebraska, appeared on behalf of Gering State Bank.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), and (B).

The matter before this Court concerns the debtors' claim of exemptions in the proceeds of a pension plan of David C. Nuttleman which is held by Prudential Insurance Company. The trustee asserts that the debtors are not entitled to exempt the retirement account under 11 U.S.C. § 541(c)(2), because the plan does not qualify as a spendthrift trust. The trustee further asserts that no exemption is available under 11 U.S.C. § 522(b)(2)(A), in that the exemptions under Nebraska law have been preempted by 29 U.S.C. § 1144(a) and no other federal law would exempt the pension plan in bankruptcy.

## BACKGROUND

Debtors, David C. and Diane E. Nuttleman, (debtors) filed a petition under Chapter 7 of the Bankruptcy Code on October 23, 1989. On the debtors' schedules at Schedule B–4 (property claimed as exempt), the debtors have claimed as exempt the proceeds of the pension plan of David C. Nuttleman with his employer, Holtorf, Kovarik, Nuttleman, Ellison, Mathis and Javoronok, P.C., which is held in a variable annuity account with the Prudential Insurance Company. The debtor alleges that on the date of filing the petition, the face value of the pension plan was approximately $50,000.00. On the debtors' schedules, they claim the pension plan exempt pursuant to Neb.Rev.Stat. §§ 25–1563.01 and 44–371 (1988).

In accordance with Section 341 of the Bankruptcy Code, the first meeting of creditors was held on December 15, 1989. On December 27, 1989, the trustee filed an objection to the debtors' claim of exemptions. The trustee specifically objected to the debtors' claim of exemption in the pension plan. On February 23, 1990, the Court denied the objection because no proof of service had been filed. The trustee subsequently filed the same objection to debtors' claim of exemptions on February 28, 1990, and a telephone hearing was held on April 20, 1990, at which time the Court allowed the parties to brief the issues.

## DISCUSSION

### A. *Federal Bankruptcy Rule 4003*

Debtors claim that the objection to their exemptions filed by the trustee was not timely filed. As authority for their position, the debtors cite Fed.Bankr.R. 4003. In essence, Fed.Bankr.R. 4003 provides that objections to exemptions must be filed within 30 days of the first meeting of creditors or the filing of any amendment to the list unless, within such period, further time is granted by the Court.

The debtors allege that the trustee is barred from objecting to the exemption because the trustee did not file the objection in accordance with Fed.Bankr.R. 4003(b).

The trustee filed an objection to the debtors' claim of exemptions in a timely manner to meet the requirements of Rule 4003(b). The trustee filed the objection on December 27, 1989. On February 23, 1990, the Court denied the objection because the trustee had failed to give notice to the debtors. On February 28, 1990, the trustee again filed the same objection to the claim of exemptions in the pension plan of David Nuttleman. This Court finds that the February 28, 1990, objection relates back to the original objection. Therefore, the objection was timely filed in accordance with Fed. Bankr.R. 4003(b). Denial of the original objection should not bar a refiling, because, rather than denial the Court could have simply required a new notice period. Debtors are not harmed by the refiling.

### B. *PROPERTY OF THE ESTATE*

This Court must first address whether the debtors' interest in the pension plan at issue is property of the estate or is excluded from the estate.

■ Under 11 U.S.C. § 541, the bankruptcy estate consists of all legal and equitable interests of the debtors at the time of the filing of the bankruptcy petition. The scope of the bankruptcy estate under Section 541 was intended to be quite broad. *In re Swanson,* 873 F.2d 1121, 1123 (8th Cir.1989); *In re Graham,* 726 F.2d 1268, 1270 (8th Cir.1984). Initially, even exempt property is included as property of the estate. *In re Graham,* 726 F.2d at 1271.

However, debtors argue that the monies held in the pension plan are excluded from their bankruptcy estate under Section 541(c)(2) of the Bankruptcy Code. Section 541(c) states in part as follows:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A). That restricts or conditions transfer of such interest by the debtor, or ...

(2) *A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.* (emphasis added)

11 U.S.C. § 541(c).

■ Section 541(c)(1)(A) brings into the estate all property even if there is a restriction on debtor's right to transfer such property. However, Section 541(c)(2) recognizes that the bankruptcy trustee would not be able to defeat a restriction on the transfer of the beneficial interest in a trust to the extent the restriction would be enforceable under state law as of the petition date.

As noted in the *Swanson* and *Graham* cases, "Congress only intended by § 541(c)(2) to preserve the status of traditional spendthrift trusts, *as recognized by state law....*" *In re Swanson,* 873 F.2d at 1123; *In re Graham,* 726 F.2d at 1271.

In the decision of *In re Swanson,* 873 F.2d 1121 (8th Cir.1989), the Eighth Circuit Court of Appeals held that the debtors' interest in a teachers' retirement fund created by the State of Minnesota was property of the estate even though some characteristics of a spendthrift trust were present. The debtors in *Swanson* made mandatory contributions to the fund and could reach those contributions plus accumulated interest upon termination of employment. After generally observing that Minnesota spendthrift trust law was less than specific, the Court determined that the contributions, (even though involuntary) and the potential control over the fund outweighed the fact that the funds could not be assigned and that the creditors could not levy against it. *Id.* at 1123–24.

In the case of *In re Graham,* 726 F.2d 1268 (8th Cir.1984), the Court of Appeals affirmed the determination by the bankruptcy court that the debtor was required to turn over an ERISA trust fund to the bankruptcy trustee.

The court in *Graham* concluded that only a "traditional" spendthrift trust can be *excluded* from the property of the estate and that only a pension plan may be exempted from the estate. In *Graham,*

the debtor was the sole stockholder, director and officer of the corporation. The debtor contributed approximately $150,-000.00 to his fully-vested pension plan, and the debtor had resigned on the date that the petition in bankruptcy was filed. The resignation meant that the debtor could reach the funds under the terms of the plan. In turn, that meant the bankruptcy trustee could recover the funds unless the spendthrift trust provisions of the pension plan excluded the debtor's beneficial interest from the estate or unless the debtor could exempt the interest from the estate by virtue of specific exemption statutes.

This Court must follow the controlling case law of the Eighth Circuit. Mindful that the appellate courts generally avoid determining more than the facts and the applicable law in a particular case warrant, this Court concludes that the general holdings in the *Swanson* and the *Graham* cases must be applied to the instant case in a manner that is consistent with and limited to the specific facts of those cases.

■ The Court must analyze the spendthrift trust provisions under Nebraska law. An examination of Nebraska law reveals that spendthrift trusts are recognized as valid and enforceable against creditors of the beneficiary. *Matter of Leimer*, 54 B.R. 587, 590 (D.Neb.1985); *First Nat'l. Bank of Omaha v. First Cadco Corp.*, 189 Neb. 734, 205 N.W.2d 115 (1973); *Lancaster County Bank v. Marshel*, 130 Neb. 141, 264 N.W. 470 (1936); and *Weller v. Noffsinger*, 57 Neb. 455, 77 N.W. 1075 (1899). The question remains, however, whether the pension fund qualifies as a spendthrift trust under Nebraska law.

Nebraska law does not explicitly discuss the requirements typically imposed upon spendthrift trusts. For example, most jurisdictions do not enforce an otherwise valid spendthrift trust if the settlor of the trust is also its beneficiary. *See, e.g., McLean v. Cent. States, S. & S. Areas Pen. Fund*, 762 F.2d 1204, 1207 (4th Cir.1985) (interpreting Illinois law). In addition, if the beneficiary has the power to revoke the trust and exercise dominion and control over the trust res, most jurisdictions do not give the trust the protections that are generally afforded spendthrift trusts. *Id.*

■ A "spendthrift" trust is "a trust in which by the terms of the trust or by statute a valid restraint on the voluntary and involuntary transfer of the interests of the beneficiary is imposed...." *Restatement (second) of Trusts* Section 152(2) (1959). Such a trust "protects income which has been received by the trustee but has not been paid by him to the beneficiary." *Restatement (second) of Trusts* Section 152, Comment H (1959). The income of a spendthrift trust can be reached by creditors or transferred once it has been paid to the beneficiary. *Restatement (second) of Trusts* Section 152, Comment J. The corpus of the trust is not the debtors' property so the creditor cannot attach any interest until the debtors' rights to the payments are vested. *First National Bank of Omaha v. First Cadco Corp.*, 189 Neb. 734, 205 N.W.2d 115, 118 (1973); *In re Simmons*, 94 B.R. 74, 76 (Bankr.W.D. Pa.1988).

■ In this case, the spendthrift provisions of the pension plan provide in part as follows:

9.01 NON-ALIENATION AND NON-ASSIGNMENT OF BENEFITS

(a) No benefit under this plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, charge, encumbrance, garnishment, levy or attachment. Any attempt to anticipate, alienate, sale, transfer, assign, pledge, charge, encumber, garnish, levy upon or attach any benefit under this provision shall be void. No benefit under this plan shall be in any manner liable for or subject to the debts, contracts, liabilities, engagements or torts of the person entitled to it.

Exhibit 3, Section 9.01

The pension plan further provides that there shall be no loans made to the debtors. Section 10.01(a). However, under Section 4.04, the pension plan allows for voluntary contributions by the debtor and under Section 4.07, the withdrawal of those volun-

tary contributions at any time the debtor elects. Also, the pension plan provides in Section 2.29, 7.01 and 7.04 that the debtor upon termination of his employment may receive some portion, if not all, of the benefits of the pension plan which have vested at termination.

The evidence that is before this Court is that the debtor, David Nuttleman, was not a shareholder nor an officer of the professional corporation at the time of the establishment of the pension plan in 1971. At the time of the filing, the debtor owned stock in the professional corporation along with five other attorneys and was a co-trustee of the trust along with two other trustees.

Although the debtor David Nuttleman's access to his benefits under the pension plan in this case is severely limited, the fact that the debtor has any access to the pension funds by simply submitting his resignation, constitutes a power of alienation incompatible with the nature of a spendthrift trust. Immediately upon termination of his employment, the debtor would be entitled to a lump-sum payment. Since the debtor can voluntarily terminate his employment and receive benefits under the pension plan, the plan does not qualify as a traditional spendthrift trust. *In re Swanson*, 873 F.2d 1121, 1124 (8th Cir.1989).

Further, in *Swanson*, the Eighth Circuit Court of Appeals interprets Section 541(c)(2) of the Bankruptcy Code narrowly because a broad reading of the exclusion would run afoul of the policy sought to be furthered through the Bankruptcy Code. The policy of enlarging the bankruptcy estate to the maximum extent possible under the Code is of paramount importance because only then will creditors receive the distribution that they are entitled to under the Code. *Id.*

The Court concludes that the pension plan funds are part of the debtors' bankruptcy estate which includes all legal and equitable interests of the debtors, notwithstanding a restriction on the transfer of debtor's interest. 11 U.S.C. § 541(c)(1)(A).

## C. *PENSION FUND AS EXEMPT*

The debtors next claim that the retirement funds are exempted from the bankruptcy estate under 11 U.S.C. § 522(b)(2)(A). In essence, this subsection exempts from the estate property that is exempt under federal law or state or local law where the state has elected to "opt out" of the exemptions listed in Section 522(d) of the Bankruptcy Code. Nebraska has made such an election. Neb.Rev.Stat. § 25–15,105 (1985). Under Nebraska law, the debtors claim the pension plan funds as exempt pursuant to Neb.Rev.Stat. §§ 25–1563.01 and 44–371 (1988).

Section 25–1563.01 exempts from all claims of creditors, including those in bankruptcy, any interest held under a pension plan to the extent reasonably necessary for the support of the debtor. Section 44–371 allows the debtor to exempt up to $10,000 of an annuity from the bankruptcy estate.

The trustee objects to the debtors' claim of exemptions alleging that 29 U.S.C. § 1144(a) preempts any state law which relates to employee benefit plans covered by the Employee Retirement Income Security Act (ERISA). More specifically, the trustee alleges that Section 1144(a) preempts "any and all state laws insofar as they may now or hereinafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

The preemption by federal law issue concerning pensions and state exemption statutes has been addressed by numerous courts. The cases invalidating such state exemption statutes have found that in enacting ERISA, Congress intended to preempt the field as to such pension plans, and that the state legislatures are prohibited from enacting any legislation touching upon ERISA plans in any way. These cases all rely upon language in the Supreme Court's opinion in *Mackey v. Lanier Collections Agency and Service*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), to the effect that any state law which refers to or is connected with ERISA is preempted and invalid. The majority appear to hold that ERISA, 29 U.S.C. § 1144(a), preempts both specific exemp-

tions in state laws creating and governing plans and also personal exemptions in general exemption statutes. *See, In re Conroy,* 110 B.R. 492 (Bankr.D.Mont.1990) (finding opt-out state's general exemption statute preempted as to ERISA plans and citing numerous cases finding both specific and general state exemption statutes preempted). *See also, In re Gaines,* 106 B.R. 1008 (Bankr.W.D.Mo.1989) (opt-out state's general exemption statute preempted to the extent that it relates to ERISA); *In re Bryant,* 106 B.R. 727 (Bankr.M.D. Fla.1989) (opt-out state's exemption statute referring to ERISA pensions was preempted as to ERISA references); *In re Sheppard,* 106 B.R. 724 (Bankr.M.D.Fla.1989) (opt-out state's exemption statute referring to ERISA pensions was preempted as to ERISA references); *In re Weeks,* 106 B.R. 257 (Bankr.E.D.Okla.1989) (opt-out state's general exemption statute referring to ERISA plans only was preempted); and *In re Flindall,* 105 B.R. 32 (Bankr.D.Ariz. 1989) (opt-out state's general exemption statute allowing ERISA plan exemption was preempted).

Several courts take the opposite position. *In re Vickers,* 116 B.R. 149 (Bankr.W.D. Mo.1990) (state exemption statute was not preempted as it was not related to ERISA within the meaning of 29 U.S.C. § 1144(a)); *In re Volpe,* 100 B.R. 840 (Bankr.W.D.Tex. 1989) (state exemption statute was not preempted as it was not related to ERISA within the meaning of 29 U.S.C. § 1144(a)); *In re Bryan,* 106 B.R. 749 (Bankr.S.D.Fla. 1989) (state exemption statute not preempted, adopting *Volpe* analysis); *In re Martinez,* 107 B.R. 378 (Bankr.S.D.Fla.1989) (opt-out state's exemption clause allowing exemption of the ERISA plans was not preempted as it was not in conflict with federal law); and *In re Seilkop,* 107 B.R. 776 (Bankr.S.D.Fla.1989) (opt-out state's exemption statute not preempted, adopting *Martinez* analysis).

Congress enacted ERISA in response to a national concern about loss of private pension benefits resulting from financial difficulties of employers and job mobility of employees. ERISA governs two types of employee benefit plans: (1) "employee pen-sion benefit plans," which provide retirement or preferred income to employees and (2) "employee welfare benefit plans," which provide fringe benefits such as medical and life insurance to plan participants. ERISA imposes upon pension plans a variety of substantive requirements relating to participation, funding, and vesting. 29 U.S.C. §§ 1051, 1086. It also establishes uniform procedural standards concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare plans. 29 U.S.C. §§ 1021–1031, and 1101–1114.

To eliminate state interference with the accomplishment of ERISA goals, Congress included preemption language in the statute, as follows:

A. Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter *shall supersede any and all state laws insofar as they now or hereinafter relate to any employee benefit plan* ... (emphasis added)

29 U.S.C. § 1144(a).

ERISA also requires pension plans to contain prohibitions against assignment or alienation of plan benefits. Section 206(d) of ERISA, as set forth at 29 U.S.C. § 1056(d), provides: (1) "each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

The Court must determine whether ERISA, as codified at 29 U.S.C. § 1144(a), preempts Neb.Rev.Stat. §§ 25–1563.01 and 44–371 (1988). Section 25–1563.01 of the Nebraska Statutes provides in part as follows:

In bankruptcy and in the collection of a money judgment, the following benefits shall be exempt from attachment, garnishment or other legal or equitable process and from all claims of creditors: to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, an interest held under a stock bonus, pension, profit-sharing, or similar plan or contract payable on account of illness, disability, death, age, or length of the service unless:

(1) within two years prior to bankruptcy ... such plan or contract has established or was amended to increase contributions by or under the apprised auspices of the individual or of an insider that employed the individual at the time the individual's rights under such plan or contract arose; or

(2) such plan or contract does not qualify under Section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986 or the successors of such sections.

The trustee does not dispute that the debtor's pension plan fits under the exemption statute. The only objection that the trustee raises is that Section 25–1563.01 has been preempted by 29 U.S.C. § 1144(a). Section 44–371 of the Nebraska Statutes provides in part as follows:

All proceeds, cash values, and benefits accruing under any annuity contract ... shall be exempt from ... all claims of creditors of the insured and of the beneficiary if related to the insured by blood or marriage, unless a written assignment to the contrary has been obtained by the claimant.

Section 44–371 allows the debtor to exempt up to $10,000 of an annuity. The pension plan in this case holds annuities as the assets of the fund and the trustee raises a similar objection to the annuity exemption statute.

In *Mackey v. Lanier Collection Agency*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Supreme Court of the United States considered the question of whether the interests of persons in an ERISA plan could be garnished by their creditors. The beneficiaries involved were not in bankruptcy, but were being pursued in state court by a collection agency on behalf of their creditors. The interests involved in *Mackey* were in an employee welfare benefit plan, and not an employee pension benefit plan. As noted, ERISA requires that pension benefit plans contain language shielding the interest of beneficiaries from their creditors. There is no such anti-alienation requirements as to welfare benefit plans. In *Mackey*, the court considered

whether a Georgia statute prohibiting garnishment of an interest in an ERISA plan was preempted by ERISA itself. The court unanimously found that if Congress wanted to protect welfare benefit plans from claims of creditors, it knew how to do so by enacting the same anti-alienation provision it enacted for pension benefit plans. Therefore, Congress did not intend to shield welfare benefit plans from such claims. As a result, the state anti-garnishment statute, which had the effect of so shielding such plans, was in conflict with ERISA and was preempted by it. In so holding, the court pointed that ERISA preempts any and all state laws insofar as they may now or hereinafter relate to any employee benefit plans. 29 U.S.C. § 1144; *Mackey*, 108 S.Ct. at 2185.

The Supreme Court then considered whether Georgia's general garnishment statute could be used by creditors to seize the interests of plan beneficiaries to satisfy debts. The court held that ERISA does not forbid state law garnishment of any ERISA welfare benefit plan, even though the purpose may be to collect a judgment against the plan participant. Since Congress did not intend to shield such interests from creditors, and did not set up any procedure inconsistent with the state garnishment procedure, the court found no preemption. The general Georgia garnishment statute, as applied to the welfare benefit plan in *Mackey*, might be said to "relate to" a plan covered by ERISA because it enables creditors to collect debtor benefits in ERISA-qualified welfare benefit plans. However, since the application of that statute did not conflict with, and was consistent with, the intent of Congress in ERISA, the court allowed the garnishment to proceed. *Mackey*, 108 S.Ct. at 2186–87.

The Supreme Court has held that some state statutes consistent with federal law other than ERISA are not "preempted" even though such statutes "relate to" ERISA plans. *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 2902–03, 77 L.Ed.2d 490 (1983). The Supreme Court in *Shaw*, used 29 U.S.C. § 1144(d) of ERISA to find that a New York statute, which regulated the benefits available to

pregnant employees, was not preempted by ERISA because the state statute was useful in enforcing another federal statute, namely title VII of the Civil Rights Act of 1964. The Supreme Court found that given the importance of state fair employment laws to the title VII enforcement scheme, preemption would frustrate the goals of title VII and would, therefore, in the words of Section 1144(d), "modify or impair" federal law.

Here, as in *Shaw,* preemption of Nebraska's pension exemption statute Section 25–1563.01 and Nebraska's annuity exemption statute Section 44–371, would likewise modify and impair the Bankruptcy Code provision 11 U.S.C. § 522(b)(2)(A) delegating to states the right to create their own bankruptcy exemptions and would, therefore, violate 29 U.S.C. § 1144(d) of ERISA.

The Nebraska pension exemption and the annuity exemption are entirely consistent with both ERISA and the Bankruptcy Code. Congress specifically provided that ERISA would not be construed to conflict with any law of the United States. Section 1144(d) of ERISA reads as follows:

> *Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States* (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law. (emphasis added)

29 U.S.C. § 1144(d).

By its specific language, ERISA cannot conflict with any other federal law. 29 U.S.C. § 1144(d). The Bankruptcy Code is such a law. The Bankruptcy Code would allow the debtor to exempt his pension benefits to the extent necessary for support. 11 U.S.C. § 522(d)(10). The pension exemption language of the Nebraska statute duplicates the pension exemption statute in the Bankruptcy Code. The Code also allows states to opt-out and create their own bankruptcy exemptions as Nebraska has done. 11 U.S.C. § 522(b)(2)(A). ERISA is not an exemption statute. Exemption statutes do not relate to the employee benefit plan regulatory scheme of ERISA and exemption statutes permitting

debtors to keep their pension plans away from creditors are consistent with the purposes of ERISA.

There is nothing in ERISA indicating an intent to prohibit states from enacting exemption laws identical to those contained in the Bankruptcy Code itself. 11 U.S.C. § 522(d)(10). In any event, Congress determined that the Code, as another federal statute, is paramount to ERISA. The same is true for state laws enacted pursuant to specific authority of the Bankruptcy Code.

 This conclusion is further supported by general rules of statutory construction and *In re Vickers,* 116 B.R. 149 (Bankr.W.D.Mo.1990). The Bankruptcy Code specifically provides for the exemption of interests in pension plans. ERISA deals generally with such plans but does not consider their status in a bankruptcy case. A more specific statute should be given precedence over a more general one. *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980). Absent a manifestation to the contrary, a newly enacted or revised statute is presumed to be harmonious with existing law and its judicial construction. *Johnson v. First Nat'l. Bank of Montevideo,* 719 F.2d 270, 277 (8th Cir.1983). If Congress intended to prohibit states from allowing debtors to exempt ERISA plans, it could have so restricted the opt-out provision in the Bankruptcy Code. Since the Bankruptcy Code specifically allows states to create exemptions, and since ERISA does not prohibit or even speak of such exemptions, the only way to harmonize the two federal statutes is to allow the exemption.

Accordingly, the trustee's objection to the debtors' claim to exemptions is overruled.

There is no evidence before this Court concerning the amount reasonably necessary for the support of the debtors or any dependents of the debtors. If the trustee needs a hearing on this matter, he may request one within twenty-one days.