731 F.Supp. 1510 (1990)
CONSUMER BENEFIT ASSOCIATION OF the UNITED STATES, etc., Plaintiff,
v.
LEXINGTON INSURANCE COMPANY, etc., Defendant.
Civ. A. No. 87-T-897-N.
United States District Court, M.D. Alabama, N.D.
February 16, 1990.
*1511 Alvin Prestwood, Capouano, Wampold, Prestwood & Sansone, Montgomery, Ala., for plaintiff.
Sterling G. Culpepper, Jr., Balch & Bingham, Montgomery, Ala., for defendant.

ORDER
MYRON H. THOMPSON, District Judge.
With this lawsuit, the court again visits the often litigated issue of pre-emption under ERISA, the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001-1461. The issue now before the court is whether ERISA pre-empts two state-law claims for breach of contract and fraud which arose out of a reinsurance contract. Plaintiff Consumer Benefit Association of the United States, a provider of group health insurance, has brought these two claims against its reinsurer, defendant Lexington Insurance Company. Lexington has responded with a motion for summary judgment, contending that the two claims are pre-empted. The court concludes, for reasons that follow, that ERISA does not pre-empt the two state-law claims and that thus Lexington's motion should be denied.

I. BACKGROUND
Lexington Insurance Company entered into a reinsurance agreement with Consumer Benefit Association of the United States, an association which offers group health insurance to employees of its member employers. The agreement provided that Lexington would indemnify the Association against losses exceeding $30,000 per person. According to the allegations of the complaint filed by the Association, the following then occurred: Lexington refused to cover excess losses suffered by the Association; the Association then withheld premiums; and Lexington responded by cancelling the reinsurance policy.
In its motion for summary judgment, Lexington contends, as stated, that the Association's two state-law claims of fraud and breach of contract are pre-empted by ERISA.

II. DISCUSSION
Congress passed ERISA to protect employees and their beneficiaries from the abuse and misuse of funds dedicated to finance "employee welfare benefit plans."[1] An employee welfare benefit plan includes, according to ERISA, any program that provides benefits for contingencies such as illness, accident, disability, death, or unemployment.[2] The statute contains elaborate provisions concerning reporting, disclosure, and fiduciary responsibility of such plans.[3] The Consumer Benefit Association and Lexington agree that the group health insurance *1512 plan provided by the Association is a welfare benefit plan covered by ERISA.[4]
With certain exceptions, ERISA pre-empts all state laws and claims that "relate to" an employee benefit plan covered by the statute.[5] Lexington contends that the Association's two state-law claims relate to the Association's health benefit plan and are thus pre-empted. There are, according to the Supreme Court, at least three considerations that should enter into an inquiry as to whether ERISA pre-empts a state-law claim: (1) the language of ERISA's pre-emption provision; (2) the underlying purpose of that provision; and (3) the overall objectives of ERISA itself. Fort Halifax Packing Company, Inc. v. Coyne, 482 U.S. 1, 7, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987). This court is convinced that, under the circumstances presented here, all three factors point against a finding of pre-emption.[6]

A. The Language of ERISA's Pre-emption Provision
The plain language of ERISA's pre-emption provision offers little guidance. The phrase "relate to" is too broad and imprecise to be of help outside the obvious case.[7] The court must therefore turn to how the phrase has been interpreted and applied.

1. The Language as Interpreted
The Supreme Court has stated that the words "relate to" in ERISA's pre-emption provision should be construed broadly. "[A] law `relates to' an employee benefit plan, in the normal sense of the phrase," according to the Court, "if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). The Court has also emphasized, however, that the pre-emption provision should be interpreted and applied with a "common sense" view of the matter. Metropolitan Life Insurance Company v. Massachusetts, 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). Therefore, "some state actions," according to the Court, "may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that a law `relates to' the plan," Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Furthermore, *1513 courts "must presume that Congress did not intend to pre-empt areas of traditional state regulation." Metropolitan Life, 471 U.S. at 740, 105 S.Ct. at 2389. This court, therefore, will follow a broad, but common sense, approach in determining whether the two state-law claims being pressed by Consumer Benefit Association "relate to," or have only a "tenuous, remote, or peripheral" impact on, the Association's benefit plan.
As stated, the Association's state-law claims arose out its reinsurance contract with Lexington. In order, therefore, to determine whether the claims which grew out of this contract relate to the Association's employee benefit plan, the court must understand the nature of the contract itself. The contract between the Association and Lexington was a traditional "stop-loss" or reinsurance contract. The contract allowed an original insurer to spread the risk of insurance and achieve greater financial stability by turning over to another insurer, the reinsurer, a portion of the risk in return for a premium. The general rule is that the contract of insurance and that of reinsurance remain totally distinct and unconnected. The reinsurance contract accords the original insured no rights against the reinsurer; rather, the insured has contractual rights against the insurer only, and any breaches between the reinsurer and insurer in no way affect the insured's entitlements under the original policy.[8] Appleman, 13A Insurance Law and Practice §§ 7681, 7693 (1976).
An insured under the Association's benefit plan, therefore, would have had no contractual rights against Lexington; and, moreover, the relationship which existed between the Association and Lexington could not be viewed as affecting the legal obligations of the Association to its insured. Lexington was, in short, a reinsurer of the Association as insurer of the plan, not of the Association's benefit plan, and Lexington therefore had no legal relationship to the plan.
To be sure, the reinsurance relationship between Lexington and the Association could be viewed as having had the potential to affect the benefit plan economically, in the sense that if the Association had become unable to pay claims the plan would have been adversely affected. But, as stated, an original insurer will usually seek reinsurance in order to shore up its own financially stability, not that of the plan. One commentator has described in some detail the reasons behind reinsurance, as follows:
The primitive insurer, or the ceding company, finds that it has more risks than it cares to safely keep in its own portfolio. It has incurred expenses in connection with agency commissions, ordinary overhead, and the like, in addition to the reserve for payment of the claim. Consequently, it agrees to turn over to another insurer, usually one handling nothing but such reinsurances, half of such risk, or all of such risk in excess of a certain sum, in which latter event it is termed excess insurance. The premium which it pays to the reinsurer for the hazard which it assumes is not as large in proportion as that which the ceding company retains, since the reinsurer does not have a like agency expense or similar overhead. The original insured is not notified of the reinsurance, has no contract with the reinsuring company, and is generally not a party to the contract and has no legal interest therein. Thus, a diversification or spread of risk is achieved with greater security, though less profit, to the ceding company.
Appleman, 13A Insurance Law and Practice §§ 7681, p. 481 (1976). Reinsurance is, therefore, a business decision by the original insurer regarding its own portfolio, its own financial stability. It is one of many alternatives from which an insurer may choose to maintain financial stability, and cannot be any more viewed as a matter *1514 "related to" the benefit plan, or a matter of concern for ERISA law, than any other strategic business decision an insurer of health plans might make regarding non-benefit paying matters.[9] The Association's state-law claims arose out of its collateral, third-party business relationship with Lexington and, as such, do not "relate to" but have only a "tenuous, remote, and peripheral" relationship with the Association's employee benefit plan.
The Supreme Court's recent observations in Mackey v. Lanier Collections Agency & Service, Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), strongly reinforce this conclusion. There, the Court held that a Georgia general garnishment statute was not pre-empted by ERISA. In reaching this conclusion, the Court observed that "run-of-the-mill state-law claims" arising out of contract  such as claims for "unpaid rent" and "failure to pay creditors"  "are relatively commonplace" and, "although obviously affecting and involving ERISA plans and their trustees, are not pre-empted by ERISA." Id. at, 883, 108 S.Ct. at 2187. The Court then found that Georgia's garnishment law fell within this category of state claims.
The Association's two state-law claims against Lexington also fall within this category. They are run-of-the-mill state-law claims, which are collateral to the Association's benefit plan and do not "relate to" it.

2. The Language as Applied
It is also helpful to look to how courts have applied ERISA's pre-emption provision  that is, how they have attempted to draw a distinction between laws that "relate to" to a benefit plan and those that have only a "tenuous, remote, or peripheral" effect on the plan.
The Supreme Court and the Eleventh Circuit have found that the following state laws and claims were "related to" ERISA plans and thus pre-empted by ERISA: Georgia statute that singled out ERISA plans for protective treatment under the state's garnishment procedures, Mackey v. Lanier Collections Agency & Service, Inc., supra; state claims based on contract and tort for wrongful denial of plan benefits, Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); Amos v. Blue-Cross Blue Shield of Alabama, 868 F.2d 430 (11th Cir.1989) (per curium), cert. denied, ___ U.S. ___, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989); Anschultz v. Connecticut General Life Insurance Co., 850 F.2d 1467 (11th Cir.1988); Belasco v. W.K.P. Wilson & Sons, Inc., 833 F.2d 277 (11th Cir.1987); Howard v. Parisian, Inc., 807 F.2d 1560 (11th Cir.1987); state laws prohibiting discrimination in ERISA plans on basis of pregnancy, Shaw v. Delta Airlines, Inc., supra; state claims for fraud and negligence arising from sale of ERISA policy, Farlow v. Union Central Life Insurance Co., 874 F.2d 791 (11th Cir. 1989); state claim for miscalculation of ERISA benefits, Jackson v. Martin Marietta Corp., 805 F.2d 1498 (11th Cir.1986) (per ary duty under an ERISA plan, Hoover v. Blue Cross and Blue Shield of Alabama, 855 F.2d 1538 (11th Cir.1988); and state claim for fraudulent failure to disclose effect of sale of business on ERISA retirement benefits, Phillips v. Amoco Oil Co., 799 F.2d 1464 (11th Cir.1986), cert. denied, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).
The Supreme Court and the Eleventh Circuit have found that state laws and claims were not "related to" benefit plans and thus were not pre-empted in only a very few cases: Georgia's general garnishment statute, Mackey v. Lanier Collections Agency & Service, Inc., supra; and state claim for emotional distress which related to termination of employment but not denial of ERISA benefits, Clark v. Coats & Clark, Inc., 865 F.2d 1237 (11th Cir.1989).
*1515 It appears from these cases that, although no bright line can be drawn, a few general, but helpful, themes can be discerned. The Supreme Court and the Eleventh Circuit have found pre-emption in the following roughly outlined categories: those in which Congress has legislated rights or obligations of entities involved in the operation of an ERISA plan; those in which Congress has provided specific avenues of relief; and those where, although Congress has not expressly legislated as to matter or provided a statutory remedy, the state law specifically refers to and affects ERISA plans, would contravene the structure or purpose of ERISA, would require a construction of the benefit plan, or would mandate an interpretation of the statutory duties of one of the parties to the plan.[10] The Consumer Benefit Association's claims of fraud and breach of contract do not fall within any of these areas. The claims do not fall within the area in which Congress has legislated, either as to rights and duties or as to relief under ERISA or ERISA plans; the claims would not contravene the structure or purpose of ERISA; and the claims would not implicate construction of the Association's benefit plan or of the statutory duties that arise under the plan. The claims are not of the type which courts have found to be pre-empted.

B. The Purpose of ERISA's Pre-emption Provision
The Supreme Court has emphasized that in analyzing whether ERISA's pre-emption section is applicable, as in any pre-emption analysis, the purpose of Congress is the "ultimate touchstone." Fort Halifax Packing Company, Inc. v. Coyne, 482 U.S. 1, 8, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987). This is particularly true here because the phrase "relate to" is so broad and imprecise.
Congress intended, according to the Court, that ERISA's pre-emption provision would serve to round out the protection afforded plan participants by eliminating the threat of conflicting and inconsistent state laws and regulations. Fort Halifax, 482 U.S. at 9, 107 S.Ct. at 2216. Without "a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits," id., a "plan would be required to keep certain records in some States but not in others; to make certain benefits available in some States but not others; to process claims in a certain way in some States but not others; and to comply with certain fiduciary standards in some States but not in others." Id. Congress was concerned that employers might reduce employee benefits, or even refrain from adopting benefit packages, if, because of conflicting, patchwork regulation, employee plans become too burdensome to administer. Id. at 9, 107 S.Ct. at 2217.
The purposes of ERISA's pre-emption provision make clear that the Association's two claims in no way raise the types of concerns that prompted pre-emption. These concerns arise only with respect to claims which by their nature would conflict with ERISA's uniform, ongoing administrative program. The Association's state-law claims of fraud and breach of contract pose no threats of conflict with ERISA law, nor would they otherwise impede an employer's adoption of a uniform benefit administrative scheme. As noted, the two claims relate to matters completely collateral to *1516 the Association's benefit plan. Pre-emption of the two claims would not serve the purposes for which ERISA's pre-emption provision was enacted.

C. The Overall Objectives of ERISA
As explained earlier, the Association entered into a reinsurance contract with Lexington apparently for the purpose of achieving greater financial stability by spreading its risk under the ERISA plan. With its two state claims, the Association now seeks to vindicate the rights it contends it had under the reinsurance contract. What the Association seeks to achieve "not only fails to implicate the concerns of ERISA's pre-emption provision, it fails to implicate the regulatory concerns of ERISA itself." Fort Halifax, 482 U.S. at 15, 107 S.Ct. at 2219 (emphasis added). First of all, as discussed above, ERISA is not directly concerned with regulating a plan insurer's collateral business transactions, and thus was not intended to displace commonplace, run-of-the-mill state-law claims that might arise out of such transactions. But secondly and perhaps most significantly, as explained below, the extension of ERISA pre-emption to such transactions and claims, while not directly implicating ERISA's regulatory concerns, would nevertheless substantially thwart Congress's intent behind the law: to ensure the administrative and fiscal integrity of employee benefit plans.
ERISA pre-emption in the present case would foreclose relief, both coming and going, for the Association and other plan insurers. Insurers could not seek enforcement outside of ERISA's statutory scheme because it would be pre-empted. At the same time, insurers could not seek relief within ERISA's framework because ERISA's principal enforcement provision, § 1132(a), affords no avenues for such relief.[11] Section 1132(a)(2) allows a fiduciary, beneficiary, or plan participant to bring suit to obtain specified relief against any entity that serves as a fiduciary to an ERISA plan. Lexington was not a fiduciary to the plan offered by the Association.[12] Section 1132(a)(1) & (3) also allows *1517 participants, beneficiaries, or fiduciaries to seek enforcement, and redress for violations, of ERISA or an ERISA plan. The contract between the Association and Lexington was, as explained earlier, independent of the plan.[13]
As stated at the beginning of this order, Congress passed ERISA to safeguard employees and their beneficiaries from the abuse and misuse of plan funds. It does not take much foresight to see that the inability of plan insurers to enforce valid contracts, in particular reinsurance contracts, would have a direct and substantial adverse financial effect on ERISA plans. First of all, plan insurers that rely on reinsurance for fiscal stability would no longer be able to do so, with the result that the ability of these insurers to meet plan obligations would be jeopardized. Moreover, restricting the ability of insurers to enforce reinsurance contracts would most certainly discourage them from even entering into insurance contracts with ERISA plans.[14]

III. CONCLUSION
For the above reasons, the court concludes, based on the language of ERISA's pre-emption provision, the underlying purpose of that provision, and the overall objectives of ERISA itself, that the Consumer Benefit Association's state-law claims for fraud and breach of contract against Lexington Insurance Company are not pre-empted by ERISA.
Accordingly, it is ORDERED that defendant Lexington Insurance Company's motion for summary judgment is denied.
NOTES
[1] 29 U.S.C.A. § 1001(b).
[2] 29 U.S.C.A. § 1002(1).
[3] 29 U.S.C.A. §§ 1021-1031, 1101-1114.
[4] ERISA also covers "employee pension benefit plans." 29 U.S.C.A. § 1002(2) & (3). The plan offered by Consumer Benefit Association does not involve pensions.
[5] ERISA has three provisions relating to pre-emption. The first is the "pre-emption clause":

Except as provided in subsection (b) of this section[, the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....
29 U.S.C.A. § 1144(a). The second is the "saving clause":
Except as provided in subparagraph (B)[, the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
§ 1144(b)(2)(A). And the third is the "deemer clause":
Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.
§ 1144(b)(2)(B).
The Supreme Court recently summarized the typical relationship between these three clauses as follows:
If a state law "relate[s] to ... employee benefit plan[s]," it is pre-empted.... The saving clause excepts from the pre-emption clause laws that "regulat[e] insurance." ... The deemer clause makes clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company.
Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).
[6] It is noteworthy that the cases involving ERISA pre-emption that have divided the Supreme Court most deeply have turned on application of the "relate to" language. See Mackey v. Lanier Collections Agency & Service, Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); Fort Halifax, supra. This can be easily explained by the fact that the phrase "relate to" is broad and imprecise.
[7] The Supreme Court has noted that ERISA's pre-emption clause is "not a model of legislative drafting." Metropolitan Life Insurance Company v. Massachusetts, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).
[8] Of course, parties could enter into a contract in which the reinsurer agreed to be bound to the original insured, but this does not appear to have been the case between the Association and Lexington, and the court offers no opinion as to whether ERISA would pre-empt state laws governing such reinsurance contracts.
[9] ERISA differs in its treatment of welfare benefit plans and pension plans. The law

imposes upon pension plans a variety of substantive requirements relating to participation, funding, and vesting.... 29 U.S.C. §§ 1051-1086. It also establishes various uniform procedural standards concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare plans.... 29 U.S.C. §§ 1021-1031, 1101-1114. It does not regulate the substantive content of welfare-benefit plans.
Metropolitan Life, 471 U.S. at 740, 105 S.Ct. at 2389.
[10] The Second Circuit similarly has concluded that pre-empted state laws tend to be "those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." Aetna Life Insurance Co. v. Borges, 869 F.2d 142, 146 (2nd Cir.), cert. denied, ___ U.S. ___, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). And the Ninth Circuit has found that ERISA generally pre-empts in four instances: (i) where the state law regulates the type of benefits or terms of ERISA plans; (ii) where state laws create reporting, disclosure, funding, or vesting requirements for ERISA plans; (iii) when state laws provide rules for the calculation of the amounts to be paid under ERISA plans; and (iv) when state laws and common law rules seek to provide remedies for misconduct growing out of the administration of the ERISA plan. Martori Brothers Distributors v. James-Massengale, 781 F.2d 1349, 1356-57 (9th Cir.) (footnotes omitted), amended on other grounds, 791 F.2d 799 (9th Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 385 (1986).
[11] Section 1132(a) provides:

A civil action may be brought 
(1) by a participant or beneficiary 
(A) for the relief provided for in subsection (c) of this section [concerning requests to the administrator for information], or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [concerning breach of fiduciary duty];
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title [concerning information to be furnished to participant];
(5) except as otherwise provided in subsection (b) of this subsection, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter;
(6) by the Secretary to collect any civil penalty under subsection (i) of this section.
29 U.S.C.A. § 1132(a).
[12] Under ERISA, a party is a plan fiduciary if

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
29 U.S.C.A. § 1002(21)(A). See Firestone Tire & Rubber Company v. Bruch, ___ U.S. ___, ___, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989). The reinsurance contract yielded Lexington no such discretion over the management or administration of the Association's plan. Lexington did not administer the plan, offer investment advice or manage plan assets. Lexington had no contractual relationship with the employers or the employees, and was not liable to either under the reinsurance policy. It had no authority to determine which beneficiaries claims should be granted or denied. As noted, its agreement with the Association was collateral to the employee benefit plan. Lexington cannot be considered to have been a plan fiduciary. See Baker v. Big Star Division of the Grand Union Company, 893 F.2d 288, 289-90 (11th Cir.1989).
[13] The Supreme Court used similar logic to find that ERISA did not pre-empt Georgia's general garnishment law:

[S]tate-law methods for collecting money judgments must ... remain undisturbed by ERISA; otherwise, there would be no way to enforce such a judgment won against an ERISA plan.
Mackey v. Lanier Collections Agency & Service, Inc., 486 U.S. 825, 834, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988).
[14] It is even less open to question that ERISA would provide no avenue of redress for Lexington should it find itself in the position of seeking to enforce a reinsurance contract. Lexington is not a fiduciary, participant, or beneficiary entitled to seek enforcement under § 1132(a). See note 12, supra (explaining that Lexington is not a fiduciary); see also 29 U.S.C.A. § 1002(7) (defining "participant" as an employee who is eligible to receive benefits under an ERISA plan, or whose beneficiary is so eligible); § 1002(8) (defining "beneficiary" as person designated by participant or plan, who may become eligible to receive benefits).

The inability of reinsurers to enforce contracts against insurers would be just as detrimental to ERISA plans as would the inability of insurers to enforce contracts against reinsurers. The effect would be the same: to discourage reinsurance contracts and to put such contracts beyond the reach of ERISA plans and those connected with the plans.