837 F.Supp. 654 (1993)
KEYSTONE CHAPTER, ASSOCIATED BUILDERS AND CONTRACTORS, INC., In Representation of Its Members, Plaintiff,
v.
Thomas P. FOLEY, in his official capacity as the Secretary of Labor and Industry for the Commonwealth of Pennsylvania, Defendant.
The BELL TELEPHONE COMPANY OF PENNSYLVANIA, et al., Plaintiffs,
v.
Thomas P. FOLEY, et al., Defendants.
Civ. Nos. 92-0459, 92-1105.
United States District Court, M.D. Pennsylvania.
July 30, 1993.
*655 Thomas R. Davies, Harmon & Davies, P.C., Lancaster, PA, for Keystone Chapter, Associated Builders and Contractors, Inc.
Susan J. Forney, Office of Atty. Gen., Harrisburg, PA, for Thomas P. Foley.
Irwin W. Aronson, Handler, Gerber, Johnston & Aronson, Camp Hill, PA, for Pennsylvania State Building and Construction Trades Council.

MEMORANDUM
KOSIK, District Judge.
Before the court in each of the above-captioned actions are cross-motions for summary judgment. The issues to be decided in these motions are identical, and therefore will be discussed in this joint Memorandum.

I. Background
The Pennsylvania Prevailing Wage Act, 43 Pa.Stat.Ann. §§ 165-1 et seq. [the "Act" or the "Prevailing Wage Act"], and its accompanying regulations published at 34 Pa.Code 9.101 et seq., require contractors on public works projects to pay their employees the prevailing wages for the locality where the project is located. 43 Pa.Stat.Ann. §§ 165-4, 165-5, 165-6. The Secretary of Labor and Industry is required to determine the general prevailing minimum wage rate for the locality where the project is located "for each craft or classification of all workmen needed to perform public work contracts" for the duration of the project. 43 Pa.Stat.Ann. § 165-7. In determining the prevailing wage rate, contributions toward employee benefits made pursuant to a bona fide collective bargaining agreement are to be considered and integral part of the wage rate. Id. The Act sets minimum wage rates to be paid on public works projects. It does not prevent contractors from paying wages in excess of those rates. Id.
For several years prior to April 13, 1992, the Secretary interpreted the Act as precluding a contractor from receiving any credit towards a particular fringe benefit over the *656 amount listed for that fringe benefit in the wage determination issued for a specific project. As a result, employers were required to contribute fringe benefits precisely as mandated by the state for the particular locality, or pay a cash equivalent directly to employees. On April 13, 1992, the Prevailing Wage Appeals Board issued a Declaratory Order modifying this approach.[1] The Order states that "a contribution is bona fide if that contribution: (a) is made to an `employee benefit plan' or a fund or program subject to the Employee Retirement Income Security Act of 1974." The Order requires contractors to separately examine and meet the wage and fringe benefit components of the prevailing wage determination. Thus, the maximum credit an employer may take for employee benefits can not exceed the total amount of contributions for the employee benefits established by the predetermination. In that light, the Declaratory Order provides that:
No credit for contributions for employee benefits exceeding the maximum established by the predetermination shall be given and no payment in one or more employee benefit categories shall be off-set against an underpayment in wages.
An example of how the Prevailing Wage Act works is illustrative. Under the Act, for a specific project, the Secretary may determine the prevailing rate to be $20 an hour in wages and $5 an hour in fringe benefits. If an employer, pursuant to a collective bargaining agreement, pays employees $16 an hour in wages and $10 an hour in fringe benefits, however, it receives no credit for the higher payment in benefits. Under this example, the employer would be obligated to provide an additional $4 per hour in wages in order to be in compliance under the Act. Such a result may cause employers to attempt to bargain for lower benefit payments with the members of the collective bargaining group it seeks to employ on this project.

II. Procedural History
The plaintiff in Civil Action Number 92-0459, Keystone Chapter, Associated Builders and Contractors, Inc., in representation of its members ["Keystone Chapter"], filed a complaint on April 8, 1992, seeking injunctive relief against defendant Thomas P. Foley, in his capacity as Secretary of Labor and Industry for the Commonwealth of Pennsylvania ["Foley"]. The gravamen of Keystone Chapter's complaint is that the Prevailing Wage Act is preempted by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ["ERISA"].
Plaintiffs in Civil Action Number 92-1105, Bell Telephone Company of Pennsylvania ["Bell"] and Communication Workers of America, AFL-CIO, District 13 ["Communication Workers"], filed their original complaint on August 13, 1992. An amended complaint was filed on December 11, 1992. The defendants in the amended complaint are Foley, and the individual members of the Pennsylvania Prevailing Wage Appeals Board.[2] The amended complaint, in each of two counts, sought a declaratory judgment that the Prevailing Wage Act was preempted by federal law, either by the National Labor Relations Act, 29 U.S.C. §§ 151 et seq. [the "NLRA"], in Count I, or ERISA, in Count II. By Memorandum and Order dated March 16, 1993, we granted the defendants' motion to dismiss Count I of the complaint, concerning preemption under the NLRA.
On April 30, 1993, Bell and Communication Workers filed a motion for summary judgment on Count II of their complaint, claiming that ERISA preempts the Prevailing Wage Act, its accompanying regulations and the Declaratory Order of the Prevailing Wage Appeals Board dated April 13, 1992. The defendants in that action filed a cross-motion for summary judgment on the same date. Keystone Chapter filed a motion for summary *657 judgment on May 3, 1993, on precisely the same issue. Foley filed a cross-motion in that action on April 30, 1993.

III. Discussion
All parties in these two actions agree that no question of material fact exists that would prevent the entry of summary judgment on the ERISA preemption issue. Thus, our task is to determine, as a matter of law, whether the Prevailing Wage Act is preempted by ERISA.
The law of ERISA preemption has recently been summarized:
Congress enacted ERISA to subject employee benefit plans to a uniform system of federal laws governing disclosure, reporting, standards of conduct, remedies, sanctions, and access to federal courts. Since uniformity cannot be achieved if ERISA plans are subject to varying state regulations, Congress preempted "any and all State laws insofar as they ... relate to any employee benefit plans." ERISA § 514(a), 29 U.S.C. § 1144(a) (emphasis added).
Section 514(a) is deliberately expansive and "conspicuous for its breadth." FMC Corp. v. Holliday, 498 U.S. 52, 111 S.Ct. 403, 407 [112 L.Ed.2d 356] (1990). It is "virtually unique" among federal preemption statutes. Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 2854 n. 26 [77 L.Ed.2d 420], as it is "one of the broadest preemption clauses ever enacted by Congress." Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir.1990).
The term "relate to" must be given a "broad common-sense meaning." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 1553 [95 L.Ed.2d 39] (1987). A state law relates to an ERISA plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85 [97], 103 S.Ct. 2890, 2900 [77 L.Ed.2d 490] (1983). Any connection may trigger preemption, and preemption is not limited to laws relating to the specific subjects covered by ERISA. Pilot Life, 481 U.S. at 47-48 [107 S.Ct. at 1552-53]; Shaw [463 U.S. at 97], 103 S.Ct. at 2900. That a state law may be "consistent with ERISA's substantive requirements" or was enacted to "effectuate ERISA's underlying purposes" does not save it from preemption. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 2388-89 [85 L.Ed.2d 728] (1985); Mackey v. Lanier Collection Agency & Serv., 486 U.S. 825, 108 S.Ct. 2182, 2185 [100 L.Ed.2d 836] (1988). A state law may relate to a benefit plan even if it is not specifically designed to affect such plans, or its effect is only indirect. Pilot Life [481 U.S. at 46-47] 107 S.Ct. at 1552-53; Shaw [463 U.S. at 97], 103 S.Ct. at 2900; Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 1907 [68 L.Ed.2d 402] (1981); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478, 483 [112 L.Ed.2d 474] (1990).
Since no law exists in a vacuum and arguably many laws could be held to "relate to" ERISA plans, without some limits Section 514(a) could become a legal blackhole with an attractive force no state law could resist. Hence, some laws are said to affect ERISA plans in "too tenuous, remote, or peripheral a manner to warrant a finding that [they] `relate to' the plan." Shaw [463 U.S. at 2901 n. 21] 103 S.Ct. at 2901 n. 21. See, e.g., Mackey [486 U.S. at 840] 108 S.Ct. at 2191 (garnishment statute of general applicability is not preempted). The task then is to determine the precise relationship between the Act and ERISA plans. Mackey [486 U.S. at 831] 108 S.Ct. at 2186.
United Wire, Metal and Machine Health and Welfare Fund v. Morristown Memorial Hosp., 995 F.2d 1179, 1197 (3d Cir.1993) (Nygaard, J., dissenting). Additionally, "[a] state rule of law may be preempted even though it has no such direct nexus with ERISA plans if its effect is to dictate or restrict the choices of ERISA plans with regard to their benefits, structure, reporting and administration, or if allowing states to have such rules would impair the ability of a plan to function simultaneously in a number of states." Id. 995 F.2d at 1192-93 (majority opinion). Congress passed ERISA's broad preemption provision with the recognition that "[a] patch-work scheme of regulation *658 would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987). The Supreme Court has recently affirmed its broad interpretation of ERISA preemption in District of Columbia v. Greater Washington Bd. of Trade, ___ U.S. ___, ___, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992).
We believe that the Pennsylvania Prevailing Wage Act, its regulations and the Declaratory Order are clearly preempted by ERISA because this state law necessarily relates to ERISA plans. In so finding, we are in accordance with other courts who have examined ERISA preemption with respect to similar prevailing wage laws. See, e.g., General Electric Co. v. New York State Dep't of Labor, 891 F.2d 25 (2d Cir.1989); Associated Builders & Contractors v. Baca, 769 F.Supp. 1537 (N.D.Cal.1991).
In order to comply with the Act, employers on public works projects are forced to implement an administrative scheme to calculate the wages and benefits paid to individual workers on such projects, including benefits paid under ERISA plans. In fact, the Declaratory Order makes specific references to ERISA plans in noting that they are to be taken into account. See Shaw v. Delta Air Lines, Inc., 463 U.S. at 97, 103 S.Ct. at 2900 (a state law relates to an ERISA plan "if it has a connection with or reference to such a plan"). Contractors are required, at a minimum, to determine the cash equivalent of the benefits provided to workers on public projects. The Act therefore imposes on-going administrative burdens that fall within the parameters of ERISA plans. See Fort Halifax, 482 U.S. at 14 n. 9, 107 S.Ct. at 2219 n. 9 ("the ongoing, predictable nature of this obligation therefore creates the need for an administrative scheme to process claims and pay out benefits"). Such a scheme is preempted by ERISA. See General Electric, 891 F.2d at 29; Associated Builders, 769 F.Supp. at 1547.
More importantly, the Prevailing Wage Act could have an effect on the level of benefits paid to employees. Because an employer gets no credit for the amount of hourly benefits paid in excess of the prevailing rate, employers are discouraged from paying benefits at higher than the prevailing rate on pubic works projects. The effect of the Act is "to dictate or restrict the choices of ERISA plans with regard to their benefits." United Wire, 995 F.2d at 1192. Employers who also work on non-public projects may be forced to provide different levels of benefits depending on the type of project to be completed. Such a "patchwork scheme of regulation would introduce considerable inefficiency in benefit program operation." Fort Halifax, 482 U.S. at 11, 107 S.Ct. at 2217. Because of these effects, we find that the Prevailing Wage Act is precisely the type of state law meant to be preempted under § 514(a) of ERISA. See Associated Builders, 769 F.Supp. at 1548.
The defendants in both actions have requested that, if we find that the Act is preempted by ERISA, which we have, we treat the portion of the Act concerning fringe benefits as severable from the rest of the section in which it is contained. While the Prevailing Wage Act does not contain a separate severability provision, Pennsylvania's general severability statute, 1 Pa.Cons.Stat. Ann. § 1925, does encompass the Act. The statute provides that:
If any provision of any statute ... is held invalid, the remainder of the statute ... shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend on, the void provision ... that it cannot be presumed that the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.
From this statute it is evident "that there is a clearly expressed legislative preference to retain the viability of the legal portions of a statute, if reasonably possible." Planned Parenthood v. Casey, 978 F.2d 74, 77 (3d Cir.1992). The governing principles on severability *659 were set out by the Pennsylvania Supreme Court in Saulsbury v. Bethlehem Steel Co., 413 Pa. 316, 196 A.2d 664 (1964):
[A] statute or ordinance may be partially valid and partially invalid, and ... if the provisions are distinct and not so interwoven as to be inseparable ... courts should sustain the valid portions.
Id. at 666; see also Planned Parenthood, 978 F.2d at 77.
We do not believe that the portion of the Prevailing Wage Act that calls for the inclusion of benefits in the prevailing wage determination is severable from the rest of the Act. Under the Act, the prevailing rate is made up of an hourly wage rate and an hourly benefit rate. The portion of the rate based on benefits is interwoven into the Act. A prevailing rate without any allowance for benefits would be much different from the present system. We believe the legislature intended to include a benefit computation in the prevailing rate, and to enforce the Act without such a computation would be contrary to this legislative intent.

IV. Conclusion
Although we have no doubt that the Pennsylvania Prevailing Wage Act was enacted by the state legislature for admirable purposes, and has been implemented to achieve these purposes, we cannot escape the conclusion that the Act, its accompanying regulations and the Declaratory Order of the Prevailing Wage Appeals Board dated April 13, 1992, are preempted by ERISA. Therefore, we will grant the motions for summary judgment filed by plaintiffs Keystone Chapter in Civil Number 92-0459 and Bell and Communication Workers in 92-1105. The defendants' motions in both actions will be denied. Accordingly, the Pennsylvania Prevailing Wage Act, its accompanying regulations, and the Declaratory Order of the Prevailing Wage Appeals Board dated April 13, 1992 are hereby declared to be invalid and unenforceable because they are preempted by the Employee Retirement Income Security Act. Our grant of summary judgment on Count II of the complaint filed in 92-1105 will effectively close that case. While summary judgment will only be granted with respect to Count I in 92-0495, we believe that Keystone Chapter can be afforded no further relief in the remaining counts of its complaint. We will therefore direct that that case also be closed. Appropriate Orders for each action are attached.

ORDER
AND NOW, this 30 day of July, 1993, IT IS HEREBY ORDERED THAT:
the defendant's motion for summary judgment [Document 42] is denied;
the plaintiffs' motion for summary judgment [Document 35] is granted;
judgment is entered in favor of the plaintiffs, The Bell Telephone Company of Pennsylvania and Communication Workers of America, AFL-CIO, District 13, and against the defendants Thomas P. Foley, James R. Davis, Frayda Kamber, Richard W. Martz and John H. Mickens, in their official capacities;
the Pennsylvania Prevailing Wage Act, 43 Pa.Stat.Ann. §§ 165-1 et seq., its accompanying regulations published at 34 Pa. Code 9.101 et seq., and the "Declaratory Order" of the Prevailing Wage Appeals Board dated April 13, 1992 are hereby declared to be invalid and unenforceable because they are preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq; and
the Clerk of Court is directed to close this case.
NOTES
[1] A copy of this Declaratory Order is attached as Exhibit "A" to Keystone Chapter's Statement of Undisputed Facts, Appended to Document 37 of 92-0459.
[2] The original complaint named the Pennsylvania Prevailing Wage Board itself as a defendant. Because of possible Eleventh Amendment barriers to naming the Board as a defendant, the plaintiffs sought, and were granted, leave to file the amended compliant. Additionally, the amended complaint does not include Count III of the original complaint, which the parties agreed would be dismissed.