Barbara **MacDOUGALL,** Rosamond **Swain, Cornelius Harrington, William Kelley, Peter McCormick, Mark Wheeler, and M. Thomas Wilson, Plaintiffs and Counter–Defendants, individually and as representatives of a defendant class of individuals similarly situated,**

v.

**The UNIFIED RETIREMENT PLAN OF THE BANK OF NEW ENGLAND CORPORATION AND AFFILIATES, Defendant and Counter–Plaintiff.**

**Civ. A. No. 94–10684–MEL.**

United States District Court, D. Massachusetts.

Feb. 16, 1995.

Thomas A. Knowlton, Richard L. Alfred, Hill & Barlow, Boston, MA, for plaintiffs; Alexander W. Moore, of counsel.

Dustin F. Hecker, Posternak, Blankstein & Lund, Boston, MA, Cherie L. Krigsman, McDermott, Will & Emery, Boston, MA, Judith A. Kelley, Nancy G. Ross, McDermott, Will & Emery, Chicago, IL, for defendant.

LASKER, District Judge.

On January 6, 1991, the Comptroller of the Currency declared the Bank of New England Corporation ("BNEC") insolvent. The plaintiffs—all former employees or spouses of former employees of BNEC—are beneficiaries of two BNEC–sponsored retirement funds: BNEC's pension plan (the "Pension Plan") and a Supplemental benefit plan (the "Supplemental Plan") created by the Bank of New England, N.A. ("BNE"), BNEC's primary operating subsidiary, to provide deferred compensation to bank executives or their spouses, including plaintiffs. Prior to BNEC's insolvency, the plaintiffs received a single check each month from the Pension Plan containing their monthly benefit payments from both plans. This procedure resulted from an arrangement between the two plans by which the Pension Plan made both benefit payments and the Supplemental Plan reimbursed the Pension Plan for the amount paid on its behalf.

This suit concerns the Supplemental Plan benefit payment of January 1991, which the Pension Plan made on the Supplemental Plan's behalf before BNEC's insolvency but for which, because of that insolvency, it was never reimbursed. The plaintiffs and the defendant each seek a declaratory judgment that the funds in question belong to them and move for summary judgment to that effect. The defendant, as counterclaimant, has also moved to certify the plaintiffs as a class which would be considerably larger than the number of present plaintiffs. The plaintiffs' motion for summary judgment is granted; the defendant's motions are denied.

I.

The Pension Plan is a qualified plan organized and administered under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 et seq. The Supplemental Plan is nonqualified—that is, not organized and administered under ERISA.

On January 1, 1991, the Pension Plan paid to plaintiffs on behalf of the Supplemental Plan a total of $48,344 in Supplemental Plan benefits in accordance with the conduit arrangement between the Pension Plan and the Supplemental Plan. BNE was declared insolvent and placed in FDIC receivership on January 6, 1991 without having reimbursed the Pension Plan for the Supplemental Plan benefits paid on January 1. Immediately after assuming the receivership of BNE, the FDIC chartered New Bank of New England, N.A. ("New BNE") as BNE's successor.

After BNE's collapse, the plaintiffs submitted to the FDIC claims for the Supplemental Plan benefits to which they were entitled for the period commencing *February*, 1991. The FDIC granted each plaintiff's claim. The plaintiffs understandably filed no claims for the January 1991 Supplemental Plan benefits because they had received those benefits in a timely manner and had no reason to believe that their right to them would be called into question. On May 29, 1991, any claim for the January 1991 Supplemental Plan benefits became time-barred under the FDIC's administrative rules.

For its part, after the installation of a new administrator, Ben Branch, on June 5, 1991, the Pension Plan sought reimbursement from several sources for the January 1991 Supplemental Plan benefits which it had paid the plaintiffs and other eligible beneficiaries. First, after learning of the May 29 bar date on claims against the FDIC, Branch filed a proof of claim with New BNE seeking repayment. The claim was denied by the FDIC on May 14, 1992 on the grounds that New BNE had not assumed any obligations under the Supplemental Plan. The Pension Plan next instituted a suit for reimbursement in this district against the FDIC in its capacity as receiver for New BNE. That litigation is still pending. Finally, Branch sought repayment from Fleet Norstar Financial Group, Inc., which had succeeded the Connecticut Bank and Trust Company, N.A. as trustee of the Pension Plan. On January 8, 1992, Fleet rejected the claim on the grounds that it had assumed no liability for the January 1991 Supplemental Plan benefits when it became Pension Plan trustee.

Faced with rebuffs from all corners, Branch then notified the Pension Plan participants who had received Supplemental Plan

benefits in January 1991—of whom plaintiffs are seven of roughly sixty—that the Pension Plan was obligated to recoup the January 1991 Supplemental Benefit payments and would do so by a partial withholding of Pension Plan benefits commencing May 1, 1994. The plaintiffs protested that the Pension Plan had no right to seek reimbursement from them—through garnishment of their Pension Plan benefits or otherwise. The Pension Plan agreed to forestall recoupment pending judicial resolution of the matter and this suit followed.

## II.

The plaintiffs contend that the defendant is estopped from recouping the January 1991 Supplemental Plan benefit payments because the defendant's failure to take action—either against them or the FDIC—before the FDIC bar date of May 29, 1991 was the cause of its failure to receive reimbursement and has precluded the plaintiffs from widening their own claim against the FDIC to include the Supplemental Plan benefits that were payable in January 1991. The Pension Plan responds that to allow the plaintiffs to retain the January 1991 Supplemental Plan benefits would amount to a modification of the terms of the Pension Plan in contravention of ERISA. Moreover, the Plan contends that the administrator's right and obligation to protect Plan funds preempts any equitable doctrines that might otherwise be applicable.

■ Since ERISA's enactment in 1974, it has become a familiar proposition that the statute's preemptive provisions are exceptionally broad. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any [qualified] employee benefit plan ..." 29 U.S.C. § 1144(a). Accordingly, the key question in cases in which it is claimed that ERISA preempts state law is whether the action in question "relates to" a qualified plan. State law "relates" to an ERISA plan, and therefore is preempted, even if it affects the plan only indirectly. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (citations omitted); and, where the matter in question does relate to an ERISA plan, state law is preempted even if it is

consistent with ERISA's substantive requirements. *Id.*

■ The Pension Plan is on sound ground in contending that ERISA's preemptive scope is extensive, but its position that ERISA is a trump card in this case is nevertheless without merit because the subject matter of this suit has nothing to do with ERISA or the Pension Plan's qualified status under ERISA. The defendant's argument rests on the assumption that any expenditure of Pension Plan funds can be withheld or recovered from the payee on the grounds that it was not authorized in the governing documents of the Pension Plan. The record is clear, however, that the Pension Plan's payment of Supplemental Plan benefits was not pursuant to or in connection with the Pension Plan itself, but was an additional service provided by the Pension Plan as an accommodation to the administrators of the Supplemental Plan. There is no support in the record for the notion that the reimbursable Supplemental Plan benefits paid by the Pension Plan constituted payments subject to the authority or discretion that ERISA accords plan administrators.

■ There is no dispute that ERISA regulates the payment by a qualified plan of plan benefits to its own beneficiaries. Such payments are preemptively controlled by the provisions of ERISA. However, qualified plans also make other types of payments, for items such as rent, salaries, supplies, utilities and insurance. Such payments are not "related to" qualified plans and, accordingly, ERISA does not preempt the application of state law to them. *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 833, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988). The payment of Supplemental Plan benefits was a "*Mackey* expenditure" and the fact that the plaintiffs received those payments while also receiving benefits from the Pension Plan is a fortuity that does not render the payments "related to" the Pension Plan within the meaning of ERISA.

## III.

■ The plaintiffs contend, both as plaintiffs and as counterclaim defendants, that,

because the Pension Plan failed to take any action to recoup the January 1991 Supplemental Plan benefits before the May 29 FDIC bar date, it is estopped, under the equitable doctrine of laches, from attempting to do so now. To establish a defense of laches, the plaintiffs must demonstrate: (1) unreasonable delay on the part of the Pension Plan in attempting to secure reimbursement and (2) prejudice to the plaintiffs resulting from that delay. The Pension Plan contends that the plaintiffs have failed to establish either requirement.

The plaintiffs have met their burden of showing that the Plan's delay was unreasonable. The Pension Plan knew that it had made the Supplemental Plan payments for January 1991. Its failure to institute a claim for reimbursement against the FDIC as successor of BNE before the May 29 bar date was patently unreasonable. The plaintiffs, who, unlike the Pension Plan administrators, were not professionals in this area, instituted timely and successful claims for benefits commencing in February 1991. No reason has been suggested why a claim by the Pension Plan would not also have been successful and the Plan's failure to file such a claim on a timely basis was unreasonable in the circumstances of this case.

The Plan's delay also directly prejudiced the plaintiffs by precluding them from making a claim against the FDIC on a timely basis. If the Plan were now allowed to recoup, the plaintiffs, whose only fault, if any, was in believing that the Plan would take steps to seek payment from the FDIC prior to May 29, would be deprived of benefits to which they were indisputably entitled as beneficiaries of the Supplemental Plan and yet be barred, as the result of the Plan's lack of diligence, from recovering against the FDIC, the party primarily liable for those benefits. The doctrine of laches was fashioned precisely to avoid such inequity.

The conclusion that laches is applicable to this case follows from equitable principles and the determination, discussed above, that ERISA has no bearing on this case. However, even if ERISA did preempt the assertion of laches as a state law defense, that preemption would not necessarily preclude the plaintiffs, as counterclaim defendants, from asserting the defense of estoppel by laches under ERISA. In *Law v. Ernst & Young*, 956 F.2d 364 (1st Cir.1992), the plaintiff sued his former employer for pension benefits under ERISA. The District Court found in his favor on the grounds that the employer was equitable estopped from denying that the amount of benefits demanded by plaintiff was in fact due because the employer had earlier represented that the demanded amount was correct and the plaintiff had relied on that representation to his detriment.

Although the Court of Appeals reversed on the grounds that the employer's representation was not plausible and, furthermore, that deciding in plaintiff's favor would "rewrite" the employer's pension plan in violation of ERISA, the Court nevertheless cited Justice Brennan's opinion in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 156, 105 S.Ct. 3085, 3097, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring in judgment), for the proposition that ERISA's "appropriate equitable relief" provision [1] "demonstrated Congress' intent that the federal courts fashion federal common law," *Law*, 956 F.2d at 369, and concluded, not that the defense of estoppel could not be asserted under ERISA, but rather that the plaintiff had not proven the defense in his case. *Id.* at 369–72. Here, because the issue whether the plaintiffs are entitled to the January 1991 Supplemental Plan benefits has nothing to do with the terms of the Pension Plan, it follows from the *Law* court's analysis that laches may correctly be applied in this case.

---

1. ERISA provides that:
   A civil action may be brought—
   ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of [the subchapter of ERISA relating to the protection of employee benefit rights] or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of [such] subchapter or the terms of the plan;
   ...
   29 U.S.C. § 1132(a) (emphasis added).

## IV.

■ The Pension Plan has moved to certify this case as a class action pursuant to Fed.R.Civ.P. 23. The Plan seeks certification of the following counterclaim defendant class:

> "All persons who received, on or after December 25, 1990, from the Unified Retirement Plan of Bank of New England Corporation and Affiliates (the "Plan") certain payments that exceeded the benefit payments to which they were entitled under the terms of the Plan."

In support of its motion, the Plan contends that the requirements of Rule 23(a) and (b) have been met—specifically that (1) the number and location of each of the members of the proposed class is such that joinder of class members is impracticable, (2) the questions of law and fact involved in the Plan's action against the plaintiffs are identical to those involved in any potential action against the class, (3) the claims and defenses presented in this action are typical of the claims and defenses that would be available in any potential action against the class, (4) the plaintiffs will adequately represent the interests of the class members, (5) class certification would avoid the possibility that the Plan is exposed to suits in several jurisdictions and (6) class certification would eliminate the risk that the rights and responsibilities of individual class members would be inconsistently adjudicated in different fora.

The plaintiffs oppose certification on the grounds that (1) without being certified as a class action, the outcome of this case, supplemented by a suit in Florida against other members of the putative class, would determine all potential claims by the Plan as to the vast majority of class members, (2) since the matter can effectively be litigated in two courts, the Plan has overstated the danger of inconsistent judgments, (3) the Plan has not made an adequate showing that there are questions of law and fact common to the class, (4) the Plan has not demonstrated that the class members not present in this action have available to them the plaintiffs' defense of laches and (5) the plaintiffs are not adequate class representatives because, since they have, as a group, a small amount of money at stake in this litigation, they are not motivated to assume the further expense necessary to carry the torch for other class members who have bigger stakes in the outcome.

Although there are valid arguments on both sides, the Plan's motion for class certification is denied because there is no showing that the controlling issue here—whether or not the defendant is subject to a defense of laches—would be decisive as to absent members of the proposed class. Moreover, it seems unlikely that the denial of class certification will result in excessive litigation. To the extent that· the facts of this case are identical to the facts of other cases, the ruling in this case ought to be a guide. To the extent that the facts of this case differ from the facts of other cases, certification would be inappropriate in any event.

\*  \*  \*  \*  \*  \*

Plaintiffs' motion for summary judgment is granted. The Pension Plan's motions for summary judgment and class certification are denied. Submit judgment on notice.