DECISION AND JUDGMENT ENTRY
This is an appeal from two judgments issued by the Lucas County Court of Common Pleas. In the first judgment, the court found that a benefit plan could be invaded to post a nuisance abatement bond because the defendant had failed to establish it was a pension plan, protected from alienation by federal law. In the second judgment, the court denied the defendant's motion for a new trial. Because the record supports the trial court's determination that the defendant had resources with which to satisfy the court's order to post bond and its decision to deny the defendant's motion for a new trial was not an abuse of discretion, we affirm.
Appellant, Sheldon J. Schachner, owns property in Toledo, Ohio, which has been declared a nuisance. The court ordered appellant to abate the nuisance within one hundred twenty days. When appellant failed to clean up his property, the court ordered him to post a $295,000 nuisance abatement bond. After appellant failed to post the abatement bond, appellee[1] moved that he be held in contempt. The trial court ordered a show cause hearing.
At the show cause hearing, appellant testified that he was unable to post bond because he was semi-retired as a physician and generated little, if any, income. Appellant's wife testified that the family home and a $1.5 million stock portfolio was held in her name.
On cross-examination, appellant was asked about the proceeds of rental income on commercial property allegedly owned by him. Appellant testified that the property was owned by, and its income went to, a retirement plan he had set up. Although this plan contained approximately $600,000, appellant asserted that this was a pension plan, exempt from execution pursuant to29 U.S.C. § 1002 (2)(A). Appellant testified that at his present age, sixty-seven, he could receive funds from the plan now, but refrained from doing so. Appellant explained that he has the disease lupus which is presently dormant. According to appellant, "* * * if it hits you it's pretty rough, and the reason I have haven't [sic] touched any of that money [is] because if I do need it I'm going to be pretty much incapacitated." No copy of the plan or other evidence relating to it was introduced at this hearing.[2]
The trial court ordered appellant to post the bond. In its opinion and judgment entry, the court compared a "pension fund" created pursuant to 29 U.S.C. § 1002(2)(A) with a welfare benefit plan maintained pursuant to 29 U.S.C. § 1002(1)(A). The former, according to the court, provides "retirement income" and is inalienable by federal law. The latter, the court noted, quoting the federal statute, provides for, "* * * medical, surgical, or hospital care or benefits, or benefits in the event of sickness * * *" and may be subject to attachment. The evidence presented at the hearing, the court stated, showed that the plan at issue was not to provide a means of support or a stream of income ("[that] function is performed by assets kept in [appellant's] wife's name.), but to provide "health benefits, * * * if and when * * * his lupus * * * degenerates."
The court found appellant's plan was an "ERISA welfare benefit plan", not a "pension plan." As such, the court, citing numerous federal cases, concluded the plan could be attached to pay the abatement bond.
Following the court's ruling, appellant moved for a new trial contending that he had been ambushed on the pension benefit issue and, therefore, had been unable to submit proof that the plan was indeed a federally protected pension plan. Moreover, appellant argued that the court's ruling was contrary to law.
The trial court rejected appellant's ambush argument out of hand. According to the court, appellant had ample notice of the hearing and should not have been surprised that his only substantial asset was at issue.
Regarding the legal soundness of the initial ruling, the court concluded that its decision was in conformity with the evidence presented at the show cause hearing. Further, the court stated, "* * * the plans [sic] true purpose [was] to mask [appellant's] wealth. ERISA preemption is not designed for parties to fraudulently conceal wealth from Court Judgments and creditors * * *."
Appellant now brings this appeal setting forth the following two assignments of error:
 "First Assignment of Error: The Trial Court Erred In Finding The Plan At Bar To Be A Welfare Plan And Therefore Subject To Attachment
 "Second Assignment of Error: The Trial Court Erred In Denying Schachner's Motion For New Trial"
Although appellant seeks to make this appeal a contest over the legality of his benefit plan as it was eventually revealed, that is not the precise question before us. Rather, we must determine whether the evidence introduced at the show cause hearing supports the trial court's judgment and, if so, did the court abuse its discretion in denying appellant's motion for a new trial.
 I.
In a hearing set for the purpose of providing an alleged contemnor an opportunity to show cause why such contemnor should not be held in contempt, the accused may defend his or her failure to follow the order of the court by showing that obedience was impossible. Impossibility of compliance is an affirmative defense for which the alleged contemnor has the burden of proof.Olmstead Twp. v. Riolo (1988), 49 Ohio App.3d 114, 117, citingSmedley v. State (1916), 95 Ohio St. 141, 142.
In the hearing on this matter, appellant contended that it was impossible for him to post the court ordered abatement bond because he had only minimal income and no assets. Appellant's wife testified that everything was in her name: the house, the car, and the $1.5 million investment portfolio. On cross-examination, appellant, however, admitted he was the beneficiary of a fully vested benefit plan containing $600,000. Appellant claimed that this was a pension fund, the corpus of which is inalienable pursuant to the Employment Retirement Income Security Act of 1974, as amended ("ERISA"). Appellant conceded that presently, at age sixty-seven, he could draw on the plan benefits, but does not because his wife pays all his expenses from her portfolio income and he is reserving the benefit fund should his lupus flare. Neither the plan itself nor the later submitted affidavit of attorney Behrendt, see Fn.2, was ever introduced into evidence at this hearing.
Thus, the trial court had before it only appellant's bare assertion that the benefit plan was an ERISA exempt pension plan and appellant's description of the plan indicating that he intended to use the funds in the plan as a reserve against potential illness. Citing Mackey v. Lanier Collection Agency
(1988), 486 U.S. 825, 837-838, the court noted that while ERISA
pension funds are protected from attachment, ERISA welfare benefit plans are not. The court then set out to determine whether the plan described by appellant best fit the definition of a pension plan or a welfare benefit plan.
In pertinent part 29 U.S.C. § 1002(1) provides
 "(1) The terms `employee welfare benefit plan' and `welfare plan' mean any plan, fund, or program which was * * * established or is maintained for the purpose of providing for its participants or their beneficiaries, * * *, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services * * *."
 29 U.S.C. § 1002(2) states that, * * *
 "(2) * * * the terms `employee pension benefit plan' and `pension plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program —
"(i) provides retirement income to employees, * * *"
From the evidence properly before the court, the plan described resembles a "welfare plan" as much as or more than a "pension plan." Consequently, we cannot say that the court erred when it ruled that the fund in question was a "welfare plan." Accordingly, appellant's first assignment of error is not well-taken.
 II.
With respect to appellant's overruled motion for a new trial, we initially note that a contempt hearing may be considered a trial for purposes of a Civ.R. 59 motion for a new trial. FirstBank of Marietta v. Mascrete, Inc. (1997), 79 Ohio St.3d 503, paragraph one of the syllabus.
Civ.R. 59 provides,
 "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 (1) Irregularity in the proceedings of the court, jury magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
(2) Misconduct of the jury or prevailing party;
 (3) Accident or surprise which ordinary prudence could not have guarded against;
 (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 (5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;
 (6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case
(7) The judgment is contrary to law;
 (8) Newly discovered evidence, material of the party applying, which with reasonable diligence he could not have discovered and produced at trial;
 (9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.
 In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown."
When a motion for a new trial is premised on the basis that a court's judgment is contrary to law, its decision to grant or deny a new trial will be reversed only on a showing that its decision was erroneous as a matter of law. Rhode v. Farmer
(1970), 23 Ohio St.2d 82, paragraph two of the syllabus. When a court is authorized to grant a new trial for a reason within the court's discretion, its decision will not be reversed unless it constitutes an abuse of discretion. Id. at paragraph one of the syllabus. An "abuse of discretion" is more than an error of law or of judgment, the term connotes that the court's attitude is arbitrary, unreasonable, or unconscionable. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 168-169.
In this matter, appellant based his motion for a new trial on two distinct theories: 1) surprise and 2) the erroneous legal conclusion that the fund was a welfare plan. The court rejected the "surprise" argument, noting that the only matter being resolved at the hearing was appellant's financial status. The court stated, "[appellant] cannot convince this Court that he did not know that a fund containing over $600,000 was going to be called into question, being that this is apparently the only asset kept in his name. * * * [He] cannot now argue that he was unprepared for the other side to counter his claim [that he was without funds to comply with the court's order] and present evidence as to his financial soundness." We also note that the record contains a copy of a 1997 deposition of appellant, the principal topic of which was appellant's benefit fund.
In our view, the trial court acted within its discretion when it rejected appellant's argument that he was unfairly surprised at the show cause hearing.
With respect to the trial court's characterization of the plan being contrary to law, it is axiomatic that a court's consideration is limited to the evidence introduced. The only evidence of the plan presented was appellant's testimony that he believed it to be an ERISA pension plan and his apparently contradictory testimony characterizing the plan's purpose as a financial reserve for an illness. The plan itself was not introduced into evidence, nor was the attorney's affidavit characterizing it as an ERISA "employee benefit plan."
The burden was on appellant to present evidence that assets of this plan were not available to satisfy the court's order. The trial court concluded that he had failed in this burden, a determination with which we concur.[3]
Accordingly, appellant's second assignment of error is not well-taken.
Upon consideration, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 __________________________ James R. Sherck, J.
Peter M. Handwork, J., Richard W. Knepper, P.J. CONCUR.
[1] This matter was initiated on the relation of former Toledo City Law Director, Edward Yosses. The city is the real appellee in this case.
[2] Following the hearing, the parties submitted written arguments. Attached to appellant's brief was the affidavit of attorney Harry M. Behrendt who averred that appellant's plan was an "employee benefit plan as defined by the ERISA law" and contained a nonalienation provision.
[3] Once the trial court had the actual plan in its hands, it determined that appellant's failure to admit it into evidence at the show cause hearing was tactical. Upon examining the plan, the court concluded that the timing of the plan was not as appellant purported, but supported appellee's assertion that the plan was created to hide appellant's wealth from judgments and creditors. That, said the court, was "the plans [sic] true purpose * * *."